**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Stephen Thomas HAAR,
Defendant–Appellant.**

**No. 90–2023.**

United States Court of Appeals,
Tenth Circuit.

April 22, 1991.

Robert J. Gorence, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Richard J. Knowles, Albuquerque, N.M., for defendant-appellant.

Before BRORBY and McWILLIAMS, Circuit Judges, and SPARR,* District Judge.

BRORBY, Circuit Judge.

Stephen Thomas Haar ("Defendant") appeals his conviction by jury trial for the manufacture of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C), raising the following four issues: (1) "whether the trial court erred in refusing to give a requested instruction on a lesser included offense of simple possession of methamphetamine"; (2) "whether the court erred in improperly admitting evidence of activity outside the period of time charged in the indictment"; (3) "whether the court erred in refusing to grant a mistrial following acts of prosecutorial misconduct and whether such misconduct constituted cumulative error"; and (4) "whether the court erred by calculating the guideline level for this offense using projections of

---

\* The Honorable Daniel B. Sparr, United States District Judge for the District of Colorado, sitting by designation.

the quantity of methamphetamine which could have [been] made based on the chemicals found at a residence alleged to have been rented by the appellant." We affirm.

## I.

On December 25, 1988, the Drug Enforcement Agency ("DEA") in Albuquerque, New Mexico, received an anonymous tip that a methamphetamine laboratory was in operation at 5716 Aztec Rd., N.E. The informant indicated the owner of the residence, Larry Allen ("Allen"), and Defendant had been operating the laboratory at this address for approximately three months.

On that same day, two DEA agents went to the reported address. Once on the premises, the agents detected a strong odor, known by them to be associated with the manufacture of methamphetamine, emanating from within the residence. One of the agents then noticed two bags of garbage, which had been left at the curbside in front of the house, and placed the bags inside his car for later examination. Inside the garbage bags, DEA agents discovered, inter alia, a plastic bag containing a total of 14.1 grams net weight of the substance methamphetamine.

Based on their observations, the DEA agents executed a search warrant at 5716 Aztec Rd., N.E., on December 27, 1988. Inside the house the agents discovered a room containing large amounts of chemicals, glassware and hardware commonly used in the production of methamphetamine. Additional controlled substances were seized during the search, including trace amounts of methamphetamine, phenyl acetone and several gallons of various wash solutions. Also found in the house were a .12 gauge shotgun and ammunition.

Forensic experts with the Albuquerque Police Department identified fingerprints on several of the items found during the search as the Defendant's.[1]

Prior to Defendant's sentencing,[2] a stipulation agreement was entered into between Defendant and the government, which provided in relevant part:

1. Frank Lucero, an expert witness in forensic chemistry and an employee of the Albuquerque Police Department, if called as a witness, would testify as follows:

. . . .

2. *Based upon the foregoing data and personal inspection, Mr. Lucero is of the opinion that the lab site located at 5716 Aztec N.E. could have manufactured one pound of pure methamphetamine on December 27, 1988.*

3. The basis of this opinion is using the "P2P" method of chemical synthesis, and using only those chemical precursors on site at 5716 Aztec N.E. on December 27, 1988, the amount of methylamine (exhibit 5) was sufficient for only the manufacture of approximately one pound of pure methamphetamine.

The court based its computation of Defendant's offense level on the parties' stipulation that the amount of methylamine found at 5716 Aztec Rd., N.E. on December 27, 1988, was sufficient to produce one pound pure methamphetamine. The probation department also used the stipulation in its preparation of an addendum to the original presentence report. The addendum, copies of which were provided to Defendant and his counsel prior to the sentencing hearing, reduced Defendant's base offense level from 36 to 26. This adjusted offense level, along with Defendant's placement in

---

1. While there was some dispute as to the description of these items, the issue was resolved at the first sentencing hearing where both parties agreed to the following change in the presentence report:

   THE COURT: ... [T]he ... next to the last sentence in paragraph five ... will read now, "APD forensic experts matched the fingerprints on three pieces of glassware, a single neck reaction flask, a large beaker and juice

   bottle with defendant Stephen Haar's fingerprints...."

2. The sentencing hearing that took place on January 22, 1990, was actually the second sentencing hearing. The first, held January 3, 1990, was continued to allow defense counsel the opportunity to have the quantities of "wash" found on the premises reweighed independently.

criminal history category III,[3] produced a guideline imprisonment range of 78 to 97 months, pursuant to Ch. 5, Part A (Sentencing Table) of the United States Sentencing Commission, *Guidelines Manual* (Nov. 1989) ("U.S.S.G."). At the sentencing hearing, however, the court granted Defendant a reduction of two offense levels for his affirmative acceptance of responsibility for the offense pursuant to U.S.S.G. § 3E1.1(a). The court then amended the addendum to the presentence report to reflect Defendant's total base offense level of 24, and noted the applicable guideline range, again in accordance with U.S.S.G. Ch. 5, Part A, to be 63 to 78 months' imprisonment.

After hearing counsel's statement on behalf of Defendant, the court sentenced Defendant to 66 months' imprisonment followed by a term of 3 years supervised release.

## II.

### A. *Lesser–Included–Offense Instruction*

Defendant first contends the trial court erred in refusing to give the requested lesser-included-offense instruction of simple possession. In support of this contention, Defendant argues, "[t]he theory of the defense was that the methamphetamine was being manufactured by Larry Allen, and that if [Defendant] had any involvement at all, it was in possessing methamphetamine manufactured by Mr. Allen."

■■■ When reviewing a claim of error relating to jury instructions, we review the instructions as a whole. *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973). And "[a]lthough a criminal defendant is entitled to an instruction regarding his theory of the case, a trial judge is given substantial latitude and discretion in tailoring and formulating the instructions so long as they are correct statements of law and fairly and adequately cover the issues presented." *United States v. Pack,* 773 F.2d 261,

267 (10th Cir.1985). *Accord, United States v. Bryant,* 892 F.2d 1466, 1468 (10th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3220, 110 L.Ed.2d 667 (1990); *United States v. Pinto,* 838 F.2d 426, 435–36 (10th Cir.1988). Moreover, a defendant will not be entitled to an instruction which lacks "a reasonable legal and factual basis." *Bryant,* 892 F.2d at 1468. *See also, United States v. Scafe,* 822 F.2d 928, 932 (10th Cir.1987) ("A defendant is entitled to jury instructions on any theory of defense finding support in the evidence and the law.").

■■■ In *Fitzgerald v. United States,* 719 F.2d 1069, 1071 (10th Cir.1983), we set forth the following factors that must be satisfied before a defendant is entitled to a lesser-included-offense instruction:

1. A proper request.
2. The lesser included offense consists of some, but not all, of the elements of the offense charged.
3. The element differentiating the two offenses is a matter in dispute.
4. A jury could rationally convict the defendant of the lesser offense and acquit of the greater offense.

*Id.* at 1071. "Failure to meet any part of the test is fatal for the defendant." *United States v. Joe,* 831 F.2d 218, 219 (10th Cir.1987), *cert. denied,* 484 U.S. 1072, 108 S.Ct. 1043, 98 L.Ed.2d 1006 (1988).

It is undisputed that a request for the lesser-included-offense instruction was properly made, and that the offense of simple possession includes some, but not all, of the elements of the charged offense—unlawful manufacture of methamphetamine. Therefore, the first and second factors of the *Fitzgerald* test are satisfied.

■■■ Defendant asserts the third and fourth *Fitzgerald* factors have also been satisfied in that "there was evidence of the lesser included offense of possession of methamphetamine ... and proof on the elements differentiating the two offenses was sufficiently in dispute so that the jury could consistently find defendant innocent

---

**3.** Defendant was placed in criminal history category III based on his total criminal history score of six points.

of manufacture and guilty of possession...." Defendant raises, inter alia, the following arguments as the basis for his assertion: that while "the components necessary for a methamphetamine lab were found at 5716 Aztec NE in Albuquerque, New Mexico ... this was not a working lab"; that "fingerprints identified as having belong[ed] to Mr. Haar were found on three objects located, not in the area that had been testified to as having been the laboratory, but in a separate room described as being the kitchen of the residence"; that "[a]side from 14.1 grams of yellowish powder residue found in the garbage on the exterior of 5716 Aztec NE, no methamphetamine was found"; and that "[a]s credibility of the witnesses was in issue, the jury is free to believe or disbelieve any portion of their testimony.... [Thus,] [e]very aspect of the Government's case was in dispute".

We first address Defendant's argument that the elements differentiating the two offenses were sufficiently in dispute. " 'Absent some evidence to counter the strong inference of [the charged offense] ... the issue is not elevated to a truly disputed one.' " *Joe*, 831 F.2d at 220 (quoting *United States v. Rogers*, 504 F.2d 1079, 1084 (5th Cir.1974), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975)). Here, the trial court, properly focused on the third *Fitzgerald* factor and made the following determination in regard to the existence of such a dispute:

THE COURT: I think the way the evidence was presented, there really was not a situation in which—or a dispute as to the evidence that would affect a possession charge and the evidence that would affect a manufacturing charge.

... The question is whether there is a, as I understand it the third step under *Fitzgerald*, is whether there really is a dispute or contest over evidence that establishes mere possession or manufacturing. I really don't see that in this case. I don't think cross-examination of the witnesses went in that direction....

....

... [I]f [defense counsel] had established through cross-examination that

Mr. Haar's presence was for or it could be interpreted as being solely for the purpose of sharing drugs with the others, I think that might make a difference, but I don't think that that was the tenor of the cross-examination. So I really don't think there is a dispute about the evidence as to whether it supports merely possession or manufacture.

....

... [A]fter hearing all the evidence, I just didn't think that there was any evidence elicited to establish that Mr. Haar merely possessed it and was not further involved, and I think it all is directed to manufacture and the jury is either going to have to believe that he was involved in the manufacture or not.

(Emphasis added.)

After reviewing the record as a whole, we agree with the trial court's determination that the elements differentiating the two offenses were not in dispute. Therefore, we find no abuse of discretion in the court's rejection of Defendant's requested lesser-included-offense instruction for mere possession. Having so decided, we need not reach the question of whether the fourth *Fitzgerald* factor is satisfied, as failure to meet any one of the factors is sufficient to defeat the request. *See Joe*, 831 F.2d at 219.

## B. Admission of Chemical Catalog Into Evidence

Defendant next contends the trial court erred in admitting into evidence a chemical catalog found in a storage locker rented by Defendant. He argues "the admission of the chemical catalogue ... did not meet the relevance requirement and its submission was in violation of Rule 403 of the Federal Rules of Evidence."

We give the trial court broad discretion in determining whether to admit or exclude evidence, and will not reverse its determination absent an abuse of discretion. *Huddleston v. United States*, 485 U.S. 681, 690, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988);

*United States v. Bonnett,* 877 F.2d 1450, 1458 (10th Cir.1989).

On September 26, 1989, the government filed a Notice of Intent to Present Evidence Outside The Dates Listed in the Indictment.[4] In response, the Defendant filed a motion in limine addressing all seven matters advanced in the government's notice. The court subsequently heard arguments on the evidentiary matters presented in Defendant's motion in limine and ruled separately on each. Only one of its rulings is at issue in this appeal—the admission of the chemical catalog.

During the October 2 proceedings, the following exchange occurred regarding the catalog:

MR. KNOWLES: [Defense Counsel] ... [M]y understanding is the Government wishes to produce evidence of a general catalog of chemicals found in the storage locker according to—would be rented by Mr. Haar. It is not my understanding the Government has evidence of exclusivity of possession nor do I understand the Government has evidence of this chemical catalog.

. . . .

MR. GORENCE: [Prosecutor] ... At the time of [Defendant's] arrest he possessed some documents indicating that there was a locker in his possession at American Self Storage.... [T]he people from American Self Storage will testify that it's in his name, the person that actually rented the several lockers to Mr. Haar will ID him ... from a photo spread. The custodian of records who is the current president of the company, will testify that the records that Mr. Haar filled out, the contract, the rental contract, all those things, will be offered....

Furthermore, inside and what will be offered and was the basis for the motion in limine is a chemical catalog. Now, after listening to Mr. Knowles, I think those are all perfectly good pitches to make to a jury as to the weight they should assess the chemical catalog, *but I*

submit to the Court that [it is relevant] under 401 in that it has a tendency to make the existence of any fact that is [of] consequence to the termination of this action more probable or less probable in that here we have a large chemical catalog. ... [I]t lists all kinds of chemicals, all the chemicals needed to make methamphetamine, specifically phenyl acetic acid, Methylamine, the sulfuric chloride, other things that were in the possession of Mr. Haar and which were found in the execution of the search warrant back on 5716. *And I guess it's probative ... because it tends to show that although there may be explanations and although it's something that the jury should assess the weight of, it tends to make a fact in issue in this case. It has some probative value ... in that whether or not he actually manufactures methamphetamine. It [shows] access to these kind of chemicals, the chemicals required to manufacture this—*

. . . .

MR. KNOWLES: ... I don't think this passes the test of the recent 10th Circuit case because there's no evidence of exclusivity of control of that locker.... So one, we don't know whose catalog it was; there's no fingerprint evidence taken with regard to the catalog; no evidence he ever touched it; no evidence that he had possession of it during the operative period of time....

. . . .

THE COURT: Well, what about the issue of exclusivity? Is she going to testify about that? Has anybody else had access to the locker besides Mr. Haar who rented it and I guess the owner or—

MR. GORENCE: ... I don't know the answer to that. Even if other people had access to it, I don't think it takes away from its admissibility ... obviously, if a hundred people have access to it, it's much less probative. That doesn't mean it's not admissible; it just means that it's

---

**4.** On September 29, 1989, the government filed an amended notice of its intent to present evidence outside the dates listed in the indictment.

The only change in the notice was the addition of Paragraph 3 relating to the testimony of Special Agent William Swierc of the DEA.

weighed against this Defendant as less. *The fact that in the locker that she rents that has legal documents bearing his name is chemical catalog that would assist one in the manufacture of methamphetamine is probative.... I think under 401 it's relevant and under 403 it bears on a direct issue that the Government has the burden of proving.*

THE COURT: ... On this point, I'm going to deny the motion in limine as to the chemical catalog and you may admit that.

(Emphasis added.) We find the above exchange clearly indicates both the parties and the court were focusing on the proper issues surrounding the admission of the catalog, that being consideration of Fed.R. Evid. 401 and Fed.R.Evid. 403 factors—probative value versus potential prejudice.

■ Fed.R.Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Fed.R.Evid. 403. Considering the applicable rules, the focused questions of the court, and the responses given by counsel, it is clear the court did not abuse its discretion in admitting the evidence. It properly considered the reliability, the pro-bativeness, and the potential prejudicial effect of the evidence. Moreover, we agree that the chemical catalog is relevant evidence in that it makes the existence of the fact that the Defendant had access to and/or knowledge of the chemicals necessary for methamphetamine manufacture more likely than it would be without the evidence, and that its probative value was not substantially outweighed by the risk of unfair prejudice to Defendant. We therefore uphold the trial court's determination

admitting the chemical catalog into evidence.[5]

### C. *Prosecutorial Misconduct*

Defendant next contends the trial court erred in refusing to grant a mistrial following acts of prosecutorial misconduct, and argues the misconduct of the prosecutor constitutes cumulative error. In support of his contentions, Defendant advances the following claims of misconduct: (1) "On two separate occasions during the course of this trial the prosecutor introduced evidence that had been ruled inadmissible by the Court and [did so] immediately after the prosecutor was specifically instructed to avoid specific areas of inquiry"; and (2) "during closing argument the prosecutor stated that he was offended when he heard argument relating to governmental error."

A trial court has great discretion in determining whether a mistrial is warranted based on alleged prosecutorial misconduct, and its determination will not be disturbed absent an abuse of discretion. *United States v. Pinto,* 755 F.2d 150, 153 (10th Cir.1985).

■ Defendant argues the first instance of misconduct occurred after the court instructed the prosecutor to avoid eliciting testimony relating to an alleged physical attack by Defendant. In regard to this matter, the following exchange took place outside the presence of the jury:

MR. KNOWLES: I would ask the Court to specifically instruct Mr. Gorence, in light of Mr. Gorence's statements yesterday, that he not ask why there's been confusion yesterday towards the witness as fearful.

MR. GORENCE: Well, ... I'm going to instruct [the witness] again just before we start, Your Honor, not to mention the fight. But ... I intend to ask him whether or not is he a bit apprehensive on the stand today ... and I already told him before I have no intention of getting

**5.** We note that the government's initial notice to admit evidence outside the period of the indictment indicated the chemical catalog would be offered as 404(b) evidence. However, during the proceedings on the motion in limine, the prosecutor's arguments clearly indicate it was being offered pursuant to Fed.R.Evid. 401. We believe Fed.R.Evid. 401 is the proper basis for the admission, and indeed was the basis on which the court allowed the evidence.

into the January 1st episode of where he was beaten up.

THE COURT: Well, I think you ought to stay away from that and also ask [sic] him about whether he's apprehensive. Don't mention that during your examination, but if it comes up through cross-examination, you'll have another shot at it.

The jury was then brought in and witness Randy Emerson was recalled to the stand on behalf of the Plaintiff. On direct examination the following questioning occurred:

[Prosecutor] Q: Mr. Emerson, now I'd like to take you to December 31st of last year which was after the lab was busted, did you have an occasion to meet Mr. Haar on that date?

[Witness Emerson] A: Yes, I did.

. . . .

Q: Did [Defendant] *tell you anything* on that date with regard to the lab being busted on the 27th?

A: *He just called me a "rat" and they beat me up.*

(Emphasis added.) Defense counsel then requested a side bar discussion out of the hearing of the jury, at which he objected, moved to strike, and requested a mistrial. The trial court denied the motion for mistrial but instructed the jury to disregard, in its entirety, the last response given by the witness.[6]

It does not appear from the record that the questions of the prosecutor were an attempt to undermine the instructions of the court. Furthermore, we will not presume dishonesty of the prosecutor regarding his assurances that the witness was instructed not to discuss the physical altercation of January 1. Rather, it appears the witness gave an unresponsive and inappropriate response to a valid, narrowly tailored question by the prosecutor. Finally, the court responded promptly in giving a curative instruction to the jury. For these reasons, we do not find the court abused its

discretion in denying Defendant's request for a mistrial on this basis.

■ Defendant argues the second instance of misconduct occurred after the court directed the prosecutor how to word a question dealing with "reputation type" testimony of the Defendant, specifically limiting the prosecutor to "a question relating to finding finger prints at the scene and prior information." The alleged misconduct occurred during the questioning of witness William Swierc, a Special Agent with the DEA. Defense counsel, during his cross-examination of the witness, had alluded to the fact that a "deal" had been struck with Larry Allen which led to a "shift [in] the focus [of the investigation] onto Mr. Haar." A side-bar discussion was called on the matter. Near its conclusion, the following exchange took place:

THE COURT: Well, I think your cross-examination, Mr. Knowles, did paint a picture that, all of a sudden, Mr. Swierc focused on Mr. Haar [as a] result of a deal made by Mr. Allen, and I think he's entitled to rebut that.

. . . .

... I'm going to permit [the prosecutor] to bring out that [Special Agent Swierc] had information about Mr. Haar prior to his conversations with Mr. Allen and that based on his prior information about Mr. Haar and the fingerprints that he found in his investigation and the other evidence found at the Allen home that related to Mr. Haar, that's why he got into the deal with Allen and started focusing on Haar.

. . . .

THE COURT: Okay. Now this is what I want you to limit it to, Mr. Gorence: Do not say it in terms of his reputation.

. . . .

Just state it in terms of him possessing information. Just present it in terms of, based on the fingerprints he found and the other evidence that he found at the

---

**6.** The complete instruction provided:

I'm going to instruct you to disregard the last response given by this witness. Mr. Haar, the Defendant is not on trial for anything other than the charge in the indictment that I read

to you. You must not take it into consideration in your deliberations in any sense whatsoever the response that was made by the witness to the last question.

scene and the fact that he had prior information, he shifted the focus to Mr. Haar and do not say anything more about that.

. . . .

MR. GORENCE: I'm going to ask him a leading question and ask for a yes or no response.

THE COURT: All right. I will permit that in terms of a leading question to avoid the problem.

. . . .

[Redirect examination by Mr. Gorence of Special Agent Swierc.]

. . . .

Q: . . . [W]ithout elaborating, but at the time of Mr. Allen's plea agreement, did you possess information that the Defendant, Mr. Haar, was involved in the manufacture of methamphetamine?

A: Yes, I did.

Defense counsel then made a timely objection and moved for mistrial. This motion was denied, and the court explained it did not find "it . . . so prejudicial that it should result in a mistrial, particularly in view of the fact that [the court will] instruct the jury to disregard that question."[7]

On review of the record, we are not convinced the prosecutor acted maliciously or engaged in so-called "blatant . . . misconduct" in posing the question. Nor do we believe a substantial right of Defendant was prejudiced thereby. Fed.R.Evid. 103(a); Fed.R.Crim.P. 52. And again, the trial court gave a cautionary instruction to the jury on the matter. Accordingly, we find the court was well within its discretion in denying a mistrial on this basis.

■ Defendant argues the final instance of misconduct occurred during the prosecutor's rebuttal closing argument. Defendant did not object until after the jury was released to commence deliberations, at which time defense counsel moved for mis-

trial, but did not request, and expressly refused, a curative instruction. The court denied the motion for mistrial, stating:

I think that the comment made was not prejudicial. I think it was in fair response to arguments previously made that the Government had not done a thorough job in investigating and presenting the case, so I'll deny the motion for mistrial and then I understand you do not want any type of instruction to the jury?

MR. KNOWLES: That's correct, Your Honor. . . .

■ In the absence of a timely objection, the question is not whether the particular conduct of a prosecutor was appropriate; rather, the question becomes whether the conduct rose to a level of "plain error" affecting substantial rights of the defendant. Fed.R.Crim.P. 52(b); *United States v. Young*, 470 U.S. 1, 6, 105 S.Ct. 1038, 1041, 84 L.Ed.2d 1 (1985). When addressing plain error, a reviewing court must evaluate all claims in light of the entire record so they may be viewed in proper context. *Id.* at 16, 105 S.Ct. at 1046.

In this case, during his rebuttal closing argument, the prosecutor made the following statements:

Now the questions about you acting as this block against governmental oppression, governmental error and that if you don't do that, this man's going to be unfairly convicted, I take issue at that and how the Government conducted this case, and you've heard about the warrants that were obtained, the efforts by the DEA to make sure that everything being done with this case was done with strict constitutional scrutiny. And as an employee of the Department of Justice, it offends me when someone comes up here and talks about governmental oppression

---

7. The court also went on to say:

I agree, in a sense, with Mr. Gorence, that other information obviously would mean association with this type of activity but I think the way it was asked, that, standing alone, kind of emphasized that and that's the reason I'm going to ask the jury to disregard it.

The following cautionary instruction was given when the open court proceedings resumed:

Members of the jury, I'm going to ask you to disregard the last answer that was given by this witness. . . .

or governmental error when what we're trying to do is rid this country of drugs. (R. Vol. IV, Tr. 10/4/89 at 179.)

It appears the following summation by defense counsel in his closing argument prompted the prosecutor's remarks:

[Y]our decision is the keystone of our system of democracy. *What you will be doing back there in your deliberations in this entire process is the last safeguard against governmental oppression and governmental error.* And if you can convict Mr. Haar on the evidence that's been brought before you, you might as well take this building and turn it into a parking garage because we need the space, because there just isn't enough evidence, ladies and gentlemen.

(Emphasis added.)

Considering the context in which the prosecutor's statements were made, we find the remarks were fairly "invited" by the comments of defense counsel. *Young,* 470 U.S. at 12, 105 S.Ct. at 1044. We also believe, considering the entire record before us, that the comments did not amount to "prejudicial error" affecting "the jury's ability to judge the evidence fairly," *see id.;* thus, we find no plain error to exist. *Cf. United States v. Lowden,* 900 F.2d 213, 216–17 (10th Cir.1990). We agree with the trial court's findings that the prosecutor's remarks were not prejudicial and were made in response to the remarks of defense counsel. Accordingly, we affirm the court's decision to deny the mistrial on this basis holding no abuse of discretion occurred.

▮▮▮▮ We also find Defendant's contention that the misconduct of the prosecutor amounts to "cumulative error" to be without merit. "The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error—courts look to see whether the defendant's substantial rights were affected." *United States v. Rivera,* 900 F.2d 1462, 1470 (10th Cir.1990). The effect of non-errors, however, is not to be included in the aggregation. "Individual rulings frequently will have an adverse effect on a party, but unless that party can demonstrate that the

ruling was an error, reversal would not be warranted. Impact alone, not traceable to error, cannot form the basis for reversal." *Id.* at 1470–71. Defendant has failed to prove any of the alleged instances of misconduct by the prosecutor amounted to error; thus, there exists no actual error to aggregate. We therefore refuse to grant a new trial to Defendant on this basis.

### D. *Calculation of Guideline Base Offense Level*

Defendant's final contention is that the trial court erred by using the stipulated projections of drug quantities which could have been produced in calculating the applicable guideline range. Specifically, Defendant argues, "the only amounts which should have been considered in determining the guideline amounts are the actual ... quantities of methamphetamines found."

▮▮▮ We give due deference to the district court's application of the guidelines to the facts, but review fully for errors of law. *United States v. Smith,* 900 F.2d 1442, 1445 (10th Cir.1990). The district court's factual determinations, however, are reviewed under a clearly erroneous standard. *United States v. Rutter,* 897 F.2d 1558, 1562–63 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990).

As noted above, the government entered into a stipulation with Defendant providing that its expert witness, if called, would testify that on December 27, 1988, one pound of pure methamphetamine could have been produced at the lab found at 5716 Aztec Rd., N.E. This stipulation was used in calculating the adjusted base offense level set forth in the addendum to the presentence report. At the sentencing hearing, the court inquired as to whether Defendant was in agreement with the testimony of the expert witness, and whether he understood that the one pound pure methamphetamine figure would be used in computing his sentencing guideline range. Defendant answered both of the court's

inquiries in the affirmative.[8] The court then accepted the stipulation into evidence, finding it was voluntarily and knowledgeably executed by Defendant and his counsel and would serve as "an appropriate basis for computing the offense level in this case." Defense counsel subsequently objected to the projection method being used for the drug computation, stating, "the amounts which should be considered are actual amounts there rather than amounts which could have been made," and basing his objection on the due process clause of the Fifth Amendment to the Constitution.

In our recent case, *United States v. Havens*, 910 F.2d 703, 705 (10th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991), we held the sentencing judge, upon proper testimony, may estimate the ultimate quantity of producible drugs. We also held that determining facts based on estimates derived from expert testimony is not a denial of due process. *Id.* at 706. This decision was based in part on U.S.S.G. § 2D1.4(a), incorporated into U.S.S.G. § 2D1.1 by its commentary which provides: "[i]f the amount seized does not reflect the scale of the offense, *see* Application Note 2 of the Commentary to § 2D1.4." U.S.S.G. § 2D1.1, comment., (n. 12) (Nov.1989). The commentary to U.S.S.G. § 2D1.4 provides:

> *Where there is not drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance.* In making this determination, *the judge may consider,* for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the de-

fendant, and *the size or capability of any laboratory involved.*

U.S.S.G. § 2D1.4, comment., (n. 2) (Nov. 1989) (emphasis added). The incorporation of this commentary into U.S.S.G. § 2D1.1, entitled *"Unlawful Manufacturing,* Importing, Exporting, or Trafficking ...," *id.* (emphasis added), leads us to conclude that Defendant's argument distinguishing *Havens,* on the basis that it involved attempt and not actual manufacturing, is without merit.

In the present case, the sentencing court took great care in giving Defendant the opportunity to measure independently the quantities of the chemicals and discuss various computation methods with the probation department. The only result of this opportunity, however, was the stipulation ultimately used in determining Defendant's sentence.

We conclude the district court correctly considered the stipulation agreement in determining Defendant's base offense level. The agreement was based on expert testimony estimating the drug quantity in terms of the amount capable of being produced. This is an acceptable method of computation both under the Guidelines, and by the courts. U.S.S.G. 2D1.1, commentary, note 12 (Nov.1989); *Havens,* 910 at 704–706. *See also, United States v. Evans,* 891 F.2d 686, 688 (8th Cir.1989) (upholding a conviction under 21 U.S.C. § 841(a)(1) based on a chemist's approximation of drug quantity), *cert. denied,* — U.S. ——, 110 S.Ct. 2170, 109 L.Ed.2d 499 (1990). Accordingly, we uphold Defendant's sentence as imposed by the district court.

---

**8.** The actual exchange on this matter between the court and Defendant went as follows:

THE COURT: Now did you read the stipulation before you signed it?

DEFENDANT HAAR: Yes, sir.

THE COURT: And did you confer with your attorney, Mr. Knowles, about it before you signed it?

DEFENDANT HAAR: Yes, I did.

THE COURT: The stipulation at the bottom line states that if called to testify as a witness, Frank Lucero, an expert in forensic chemistry would testify that one pound of pure methamphetamine could have been manufactured at 5716 Aztec, Northeast on December 27, 1988. It explains how he reaches that conclusion. Now you have signed the stipulation that sets that forth. Are you in agreement with that being his testimony?

DEFENDANT HAAR: Yes, sir.

THE COURT: Do you understand that this will then be used in computing sentencing guidelines?

DEFENDANT HAAR: Yes, I do.

## III.

For the aforementioned reasons, we AFFIRM the district court in all respects.