**UNITED STATES of America, Plaintiff,**

v.

**Roger P. LEESEBERG, Defendant.**

**No. 90–10082–01.**

United States District Court,
D. Kansas.

May 9, 1991.

David Lind, Asst. Atty. Gen., for U.S.

Jean Oliver Moore, Geary N. Gorup, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

On April 17, 1991, the jury returned a verdict finding Roger P. Leeseberg guilty of all four counts of wilful misapplication of bank funds in violation of 18 U.S.C. § 656. This case comes before the court upon the defendant's motion for a new trial and upon the defendant's motion for judgment of acquittal notwithstanding the verdict. The Government opposes both motions. The court, having considered the briefs of counsel, the evidence presented at trial and the applicable law, is now prepared to rule.

## MOTION FOR NEW TRIAL

The defendant asserts in six separate paragraphs alleged errors entitling him to a new trial. At trial, the defendant testified on his own behalf and claimed that he did not wilfully misapply the funds of the bank. The defendant contended that each of the four transactions for which he was charged were done with the authorization of the bank customer.

The court may grant a motion for new trial "if required in the interest of justice." Fed.R.Crim.P. 33. "A motion for new trial 'is not regarded with favor and is granted only with great caution, being addressed to the sound discretion of the trial court.'" *United States v. Page*, 828 F.2d 1476, 1478 (10th Cir.), *cert. denied*, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987) (quoting *United States v. Allen*, 554 F.2d 398, 403 (10th Cir.), *cert. denied*, 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977)). *See United States v. Martinez*, 763 F.2d 1297 (11th Cir.1985).

The court will discuss each of the arguments raised by the defendant. The court notes that neither of the defendant's motions contain any reference to relevant case law.

1. The jury misunderstood the burden of proof.

■ Leeseberg contends the jury obviously misunderstood the burden of proof as the evidence was insufficient to support his conviction. The court has again reviewed the jury instructions and is confident that the instructions, particularly instructions 5, 7 and 8, accurately and clearly explain that the government bears the burden of proving the defendant's guilt beyond a reasonable doubt as well as providing the definition of "reasonable doubt." "The assumption that juries can and will follow the instructions they are given is fundamental to our system of justice." *United States v. Lonedog*, 929 F.2d 568 (10th Cir.1991) (quoting *United States v. Cardall*, 885 F.2d 656, 668 (10th Cir.1989)). As discussed later in this opinion, the court is satisfied that the evidence viewed in the light most favorable to the Government proved each of the elements of the charged offenses beyond a reasonable doubt. The court finds this argument unpersuasive and without merit.

2. The Government violated the defendant's Fifth and Sixth Amendment rights.

■ Leeseberg contends that the Government, during direct examination of a Government witness, asked a question which inferred that Roger Leeseberg had a duty to produce a note located at Leeseberg's home to prove his innocence, thus commenting on Leeseberg's right to remain silent and shifted the burden of proof to the defendant.

During the Government's case-in-chief, Dan Gipple, an examiner with the Office of the Comptroller of the Currency, testified to statements made by the defendant during the bank's board of director's meeting on December 7, 1988. It was at this meeting that the board confronted Leeseberg with evidence of the $100,000 Galvin transaction.[1] Gipple testified that Leeseberg

---

1. The Government's evidence indicated that Roger Leeseberg had taken the proceeds of a $100,000 certificate of deposit formerly owned by Leo Galvin, a long-time bank customer and shareholder in the bank's holding company, and applied the funds to debts of the bank's holding company. Roger Leeseberg testified that Leo Galvin had given the money to Leeseberg as a gift to the bank, which in turn would benefit the community.

said the $100,000 transaction was a gift from Leo Galvin to be used for the bank. According to Gipple, Leeseberg claimed he considered the gift to be a loan and had prepared a note which evidenced his claim. Mr. Gipple and other witnesses testified that when they requested Leeseberg to retrieve the document from his home in Independence, Kansas, Leeseberg either refused to do so or did not respond to the request.

During cross-examination, the defendant's attorney explored Gipple's testimony concerning the note. The defendant's attorney inquired as to whether Gipple understood that the written document was a promissory note or a "note" in the common usage of the word. Counsel also inquired into the purpose and tenor of the meeting. It is clear that the meeting was called not only to confront Leeseberg with the $100,000 transaction, but unless a satisfactory explanation of the transaction was given, to request his resignation or in the alternative fire him. A letter of resignation was apparently prepared for Leeseberg's signature prior to the time the meeting began.

On redirect, the Government asked Gipple if he would expect one accused of misappropriating monies would retrieve a document that the accused person claims to possess in order to prove the existence of the document. The defendant objected to this question and the court sustained the objection. Immediately after that question was asked, the defendant, in chambers, made a motion for mistrial based upon that question, basically making the same argument presented in this motion.

The court concludes that this question, while improper as it calls for speculation, does not constitute an unconstitutional comment upon Leeseberg's right to remain silent, nor does the question impermissibly shift the burden of proof to the defendant.

The question asked related to Leeseberg's attitude and demeanor on December 7, 1988, and was not a comment on Leeseberg's failure to produce the note at trial. At the time the bank examiners asked for the note, Leeseberg was not under arrest. The court is not persuaded that the question, in the context in which it was asked, was a comment on the defendant's right to remain silent, nor did the question shift the burden of proof from the Government.

In any event, the jury was correctly instructed that the burden of proof is always on the Government and that a plea of not guilty "puts in issue every material ingredient of the crime charged and makes it incumbent upon the United States to establish by the evidence, to your satisfaction beyond a reasonable doubt, as such term is hereinafter defined, every material allegation of the offense charged." Instruction 5. Instructions 8, 10, and 15 each explain that the law never imposes upon the defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

The court concludes that this argument is without merit.

### 3. Improper argument.

■ Leeseberg contends the Government improperly argued "that the instructions would permit the jury to convict the defendant even if he had legitimately obtained the contested funds from Mr. Galvin and Mr. Jackson, because the subsequent transfers of funds constituted the crimes in question." The Government contends that the defendant's recollection of the Government's closing statement is incorrect. The court notes that no contemporaneous objection was made during the Government's closing argument. "In the absence of a timely objection, the question is not wheth-

At the time of the transaction, the evidence indicated that Galvin's mental capacity was declining. In regard to the $100,000 transaction, it was the Government's position that Roger Leeseberg had either (1) never received a gift of $100,000 from Galvin and had therefore wilfully misapplied the $100,000 to his own benefit by making payments to the bank's holding company (in which Leeseberg and his wife had sub-

stantial interests); or (2) Even if Galvin had made a gift of $100,000 to the bank, Leeseberg's application of the funds to benefit the bank's holding company constituted a wilful misapplication of the funds as there was testimony that a benefit to the bank's holding company did not benefit the bank, and thus would have been contrary to Galvin's instructions.

er the particular conduct of a prosecutor was appropriate; rather, the question becomes whether the conduct rose to a level of 'plain error' affecting substantial rights of the defendant." *United States v. Haar,* 931 F.2d 1368, 1376 (10th Cir.1991) (citing Fed.R.Crim.P. 52(b); *United States v. Young,* 470 U.S. 1, 6, 105 S.Ct. 1038, 1041, 84 L.Ed.2d 1 (1985)).

As set-out more fully in footnote # 1 of this opinion, the Government argued that the defendant could be convicted of wilful misapplication of funds even if Galvin had made a $100,000 gift to the bank because Leeseberg had used the money to benefit the bank's holding company (which indirectly benefited Leeseberg and his wife), which, according to the Government's witnesses, did not benefit the bank. Therefore, the Government's argument was not improper. If the jury believed that Leeseberg used the $100,000 for a purpose which did not comport with the directions of Leo Galvin (and concurrently personally benefited the defendant), his actions constituted a wilful misapplication of bank funds.[2]

The court concludes that this argument was not improper and did not deprive the defendant of a fair trial.

4. Improper argument as to credibility of witnesses.

■ In closing argument, during the Government's rebuttal, the prosecutor made statements which injected his personal opinion regarding the credibility of the witnesses. This argument drew an immediate objection which was sustained. The defendant contends that this error entitles him to a new trial. The Government responds that this error, if it was error, does not necessitate a new trial.

"A trial court has great discretion in determining whether a mistrial is warranted based on alleged prosecutorial misconduct, and its determination will not be disturbed absent an abuse of discretion." *Haar,* 931 F.2d at 1374 (citing *United*

States v. Pinto, 755 F.2d 150, 153 (10th Cir.1985)).

"[A] prosecutor's summation may appropriately suggest to the jury what inferences it ought to draw from the evidence in the case." *United States v. Peña,* 930 F.2d 1486, 1490 (10th Cir.1991). It is improper, however, for the prosecutor to inject his personal opinion as to the credibility of the witnesses or weight of the evidence. *See Hopkinson v. Shillinger,* 866 F.2d 1185, 1206 (10th Cir.1989) ("A prosecutor should not assert his personal knowledge of the facts, except when testifying as a witness."); *United States v. Ainesworth,* 716 F.2d 769 (10th Cir.1983). However, the court concludes that this error did not deprive the defendant of a fair trial and does not serve as proper ground for a new trial. The prosecutor's injection of his personal opinion was singular and isolated. The defendant's timely objection was sustained.

In *Hopkinson,* the court of appeals commented:

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor...." [T]he aim of due process "is not punishment of society for the misdeeds of the [sic] prosecutor but avoidance of an unfair trial to the accused." *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982) (quoting *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). We must keep in mind the admonition that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." [*United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985).]

*Hopkinson,* 866 F.2d at 1210. *See Peña,* 930 F.2d at 1491. *See also United States v. Lowden,* 900 F.2d 213, 216–217 (10th Cir.1990).

---

**2.** Conversely, if Leeseberg had authorization to make the transactions for which he was charged

he could not be convicted of "wilful misapplication" of funds.

Instruction 24 explains in part that "[s]tatements, and remarks of counsel are not evidence in the case." The court concludes that the prosecutor's comments, viewed as a whole, did not sway the jury and did not deprive the defendant of a fair trial.

5. False and misleading statements of the Government's witnesses.

■ Leeseberg contends that he has discovered new evidence indicating that two of the Government's witnesses gave false and misleading testimony. The defendant contends that he has reason to believe that he can now produce

a written communication of William Schmidt acknowledging that due to banking regulations prohibiting Roger Leeseberg from loaning money to himself, that he (Mr. Schmidt) would solely be responsible on the note used by Shar–Bar in the purchase of the Cook lease. Furthermore, the Defendant now believes that he can produce newspaper clippings and testimony demonstrating that prior to Roger Leeseberg's dismissal at the First National Bank of Oswego, that he (Mr. Jackson) acknowledged that he was purchasing the Cook lease.

The Government responds that this evidence, viewed in the light of all of the evidence, is inconsequential and would not have, even if produced at trial, had a substantial impact on the verdict. The Government notes that defendant was given full discovery, and thus was aware that Schmidt and Jackson were potential witnesses. The Government also notes that Leeseberg took full advantage of his opportunity to cross-examine the witnesses at trial.

In order to obtain a new trial under Rule 33 based upon newly discovered evidence, the defendant must show that: (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely cumulative or impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in

a new trial it would probably produce an acquittal. *United States v. Sutton,* 767 F.2d 726, 728 (10th Cir.1985). The Tenth Circuit has indicated that such motions are "not regarded with favor and should be granted only with great caution." *Sutton,* 767 F.2d at 728. (citing *Allen,* 554 F.2d at 403). *See United States v. Kelley,* 929 F.2d 582 (10th Cir.1991).

Generally, newly discovered evidence which is merely cumulative or impeaching will not justify granting a new trial. *Mesarosh v. United States,* 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1 (1956). It is within the court's discretion, however, to grant a new trial if "it appears that had the impeaching evidence been introduced, it is likely that the jury would have reached a different result." *United States v. Davila,* 428 F.2d 465, 466 (9th Cir.1970).

The court concludes that the "newly" discovered evidence, if the defendant were able to actually produce such evidence, is not sufficiently probative to cast serious doubt upon the jury's verdict and that if Leeseberg had produced this evidence at trial it is unlikely that the jury would have reached another result. The court notes that this evidence relates solely to Counts I and II of the superseding information. The evidence against Leeseberg was substantial; the "newly" discovered evidence would only be used for impeachment purposes. The court concludes that it is unlikely that the jury would have reached another result had it heard this impeaching evidence. The defendant cross-examined each of the witnesses and explored the personal motives of each of the witnesses. Moreover, the court is not satisfied that this information, if now available, was not available prior to trial and the failure to introduce this evidence at trial was due to the defendant's own lack of diligence.

The defendant's motion for a new trial based upon newly discovered evidence is denied.

6. Evidence of pending civil cases.

■ At trial, the defendant called character witnesses to testify on his behalf. These witnesses testified to the defendant's

reputation for truth and honesty in the community. On cross-examination, after a conference outside of the hearing of the jury, the Government was allowed to ask each of the character witnesses if they were aware of pending civil cases brought by former Oswego Bank customers against Leeseberg.

The defendant contends that these questions by the prosecution were prejudicial as the jury was left to speculate upon the grounds for those suits and the circumstances surrounding those suits. Leeseberg contends that because the Government introduced this evidence without the underlying facts solely to impeach the character witnesses and to discredit him personally, he is entitled to a new trial. The Government responds that once the defendant has placed his character and reputation for truth and honesty at issue by calling character witnesses, the Government is entitled to explore the knowledge of those witnesses.

Prior to ruling on this issue at trial, the court reviewed Rule 405, relevant case law and treatises discussing the rule. Federal Rule of Evidence 405(a) provides:

> Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

A recognized treatise on evidence comments:

> Once the defendant has opened the door to a discussion of his character by calling character witnesses under Rule 404(a)(1), the prosecution may both cross-examine defendant's witnesses and call its own witnesses in rebuttal. Rebuttal witnesses may testify only to reputation and to opinion. Testimony pertaining to specific acts by defendant is not allowed, but on cross-examination, the prosecution may ask defendant's character witnesses whether they have heard about or know about specific acts committed by defen-

dant in order to test their knowledge and standards for good reputation.

J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 405[02] at 405–22 through 405–23 (1991 Supp.). Later in the treatise, the author comments:

> Rule 405 permits cross-examining character witnesses for defendant by asking them whether they had heard of specific acts committed by defendant, because the inquiry is not directed toward proving the conduct of defendant but toward evaluating the credibility of the witness.

*Weinstein's Evidence* ¶ 405[04] at 405–47. *See* W. Cleary, *McCormick on Evidence* § 191 at 566–570 (3rd ed. 1987).

In *United States v. McQuire*, 744 F.2d 1197, 1204 (6th Cir.1984), the court of appeals affirmed the district court's decision to allow the prosecution to test the defendant's character witnesses' knowledge by inquiring into their knowledge of a pending civil suit against the defendant.

In *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), the Supreme Court commented on the dangers of presenting good character witnesses:

> The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him. The prosecution may pursue the inquiry with contradictory witnesses to show that damaging rumors, whether or not well-grounded, were afloat—for it is not the man that he is, but the name that he has which is put in issue. Another hazard is that his own witness is subject to cross-examination as to the contents and extent of the hearsay on which he bases his conclusions, and he may be required to disclose rumors and reports that are current even if they do not affect his own conclusion. It may test the sufficiency of his knowledge by asking what stories were circulating concerning events, such as one's

arrest, about which people normally comment and speculate. Thus, while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans.

335 U.S. at 479, 69 S.Ct. at 220 (footnotes omitted).

In the case at bar, once the defendant placed his character in issue, the Government was entitled to test the character witnesses' knowledge of the defendant's reputation in the community. Asking those witnesses about their knowledge of pending civil suits against the defendant was a permissible inquiry; those suits were based on facts similar to the facts surrounding the Galvin transaction. The court notes that the defendant did not request a limiting instruction concerning this inquiry by the Government. The court also notes that the jury was instructed that the defendant was "only on trial for the acts alleged in the superseding information." Instruction 6.

The court concludes that its ruling on this matter was correct.

The court concludes that the defendant has received a fair trial and that any of the alleged errors, either individually or in combination, do not justify granting him a new trial. The defendant's motion for a new trial is denied.

## MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT

The defendant contends that there was insufficient evidence to convict him of the four counts charged in the superseding indictment. The defendant also contends that the jury panel was tainted by the Government's question concerning the production of the note, i.e. that the question was a comment on the defendant's right to remain silent and shifted the burden of proof to the defendant. The court has already addressed the latter of these two arguments and once again concludes that the question did not violate the defendant's constitutional rights. The Government opposes the motion.

The evidence is sufficient to support a conviction if, viewed in the light most favorable to the Government, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Tranakos*, 911 F.2d 1422, 1430 (10th Cir.1990) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The evidence supporting a conviction must be substantial, raising more than a mere suspicion of guilt (citation omitted), although the evidence can be wholly circumstantial. *United States v. Williams*, 923 F.2d 1397, 1402 (10th Cir.1990).

■ The court is satisfied that the evidence was sufficient to support the jury's verdict. While Leeseberg provided the jury with a plausible explanation of the transactions for which he was convicted, the jury was not required to believe the defendant's own version of the facts.

As to the Jackson transactions, Jackson took the witness stand and testified that he did not authorize the $37,632.52 loan, nor did he authorize the $1,000 transaction. It was within the province of the jury to believe Jackson and reject the testimony of the defendant. Moreover, there was evidence that Jackson did not personally receive the proceeds of the loan, thus adding weight to Jackson's testimony. In any event, there was sufficient evidence from which the jury could have rationally concluded that the Government had proven the elements of those charged offenses beyond a reasonable doubt.

As to the transactions involving Galvin's $100,000, the court concludes that a rational factfinder could have concluded that the Government had proven each of the elements of the crimes charged. The evidence

cast serious doubt on whether Galvin would have given the bank a gift of $100,-000.[3] Moreover, the circumstances generally surrounding the "gift" of $100,000 cast serious doubt upon Leeseberg's version of the facts. As discussed above, even if Galvin had made a gift of $100,000 to the bank,[4] the jury could reasonably have concluded that using the money to pay off the debts of the bank's holding company constituted a wilful misapplication of funds, as there was testimony that money given to the bank's holding would not benefit the bank itself. Therefore, the defendant would not have applied the $100,000 in the manner authorized by the bank customer but instead applied the money in a manner which personally benefited himself. Either of these actions by the defendant would constitute violations of 18 U.S.C. § 656.

IT IS THEREFORE ORDERED that the defendant's motion for a new trial (Dk. 43) is denied.

IT IS FURTHER ORDERED that the defendant's motion for judgment of acquittal notwithstanding the verdict (Dk. 42) is denied.

---

[3] As but one example, one of Galvin's long-time friends and fellow golf-enthusiast testified that although Galvin was capable of philanthropic acts, Galvin would sometimes spend three hours looking for a fifty-cent golf ball.

[4] There was evidence from which the jury could have rationally concluded that Galvin did not make a $100,000 gift to the bank.