**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 27 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

MICHAEL EDWARD HAYDEN and
BARRY B. BROWN,

     Defendants-Appellants.

Nos. 96-3097, 96-3098
(D.C. No. 94-10064-01 & 02)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **LOGAN**, and **EBEL**, Circuit Judges.

     We join these cases because the appellants were tried together and the dispositional issues are virtually the same. The parties are well acquainted with the facts and the issues; therefore, we will not dwell on them except to the extent necessary

---

    [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

to explain our conclusions. Having decided appellants have demonstrated no reversible error, we affirm the judgments of the district court.

Appellants first contend there is insufficient evidence of a conspiratorial agreement to sustain the charge of conspiracy to sell crack cocaine. Additionally, Barry Brown postulates the government's case was a fabric constructed of an "inference upon an inference," rather than proof. Viewing the evidence in a light most favorable to the prosecution, we must disagree.

Conspiracies can be established by both direct and circumstantial evidence. *United States v. Hardwell*, 80 F.3d 1471, 1482 (10th Cir. 1996). Yet, inasmuch as conspiracies are generally founded upon secret agreements shared only by the accused, one should not realistically expect the availability of direct evidence to prove the charge. Consequently, the government's proof usually must depend upon the development of circumstantial evidence that leads the jury to its determination. This much is conceded by the defendants. However, they each pluck the fruits from the tree of circumstances constituting the government's case, disparage them as unworthy proof, and then criticize the tree because it bears no fruit. That tactic will not produce a reversal of the judgment.

The government's burden here was to establish the defendants had reached an agreement to vend crack cocaine, the essential aspects of which are that each was knowledgeable of its essential objectives and each was a voluntary participant in the endeavor. *United States v. Richardson,* 86 F.3d 1537, 1546 (10th Cir. 1996). After

- 2 -

viewing the evidence, we believe there are sufficient facts and inferences which establish concerted action between the defendants for accomplishment of a common purpose. *See Hardwell*, 80 F.3d at 1482.

Barry Brown complains the evidence did not show he personally conducted a drug transaction, or that he ever agreed to do so with the other defendants. He asserts the government did not prove any drug related conversation took place in his presence. Therefore, he concludes, it is evident the whole case against him consists of inferences based on inferences. Were that true, of course, his conviction could not stand; but that is not the case here, as we shall discuss later.

Michael Hayden argues the prosecution failed to prove he entered into an agreement with the others to distribute crack, nor did it prove he had any knowledge of the objectives of the conspiracy. He states the place where crack was seized was leased by Barry Brown, and although he received some mail there, the record shows he told police he lived at another location. Finally, he asserts, the evidence is devoid of proof he ever conducted a drug transaction.

Both of these arguments ignore the evidence upon which the government relies. Naturally, if the prosecution depended upon direct evidence these two men sat down and entered an agreement to deal in cocaine and then made direct sales observed by others, their points would be telling. Yet, in light of the evidence, their arguments are specious.

The case against the defendants is a web of facts and circumstances that logically could lead a reasonable jury to determine the defendants conspired to sell crack cocaine. Although the evidence does not show each defendant made sales, had conversations about sales, or even reaped profits from sales, the government proved the business of selling crack cocaine was flagrantly carried on at 633 North Harding, a place where each had more than a passing connection, and that both defendants were interconnected in business and personal relationships. Moreover, circumstances such as the cocaine and cash in Mr. Hayden's pants, the freshly cooked crack in the refrigerator, the cash and crack found on Mr. Brown's person, the tools of the drug trade lying openly on the kitchen table together with business cards from a business operated by both men, are strong evidence of their knowledge and participation in the joint endeavor. The fact that Mr. Hayden appeared wearing only his undershorts, his clothes having been left in a nearby bedroom, suggests he was more than a mere transient and that he was affiliated with the illegal business that was operated at the residence.

The jury's decision was obviously based on circumstantial evidence or inferences, but that evidence logically flowed from the facts established by the prosecution. That the jury chose to draw those inferences is within its province. *United States v. Ramirez*, 63 F.3d 937, 945 (10th Cir. 1995) (The jury may infer an agreement constituting a conspiracy from the acts of the parties and other circumstantial evidence indicating

concert of action for the accomplishment of a common purpose and presume knowing participation when a defendant acts in furtherance of the objective of the conspiracy.).

The defendants next argue the instruction on conspiracy was deficient. We disagree. We are troubled by this argument only because it descends beyond the trivial to the disingenuous.

Defendants contend the instruction contains markings which might be interpreted as a striking of a portion of the instruction critical to the defense. Having set up this straw man, defendants proceed to batter it to a frazzle. They assert prejudice because, when responding to a question by the jury, the court referred to the marked-up conspiracy instruction, and defendants claim it is possible that the jury was confused.

We believe the district court intended to strike the language through which the markings pass. We reach this conclusion because the marked language is identical to the immediately preceding language of the instruction. The eliminated language was redundant and unnecessary. We cannot conceive the jury would believe it should not consider the amended instruction as a whole, including the unaltered language key to the defense. No prejudice resulted from the striking.

Mr. Hayden alone contends the district court erroneously enhanced his sentence for the possession of a firearm. At sentencing, the court stated:

> I've heard the evidence in the case and the evidence showed that the house in which -- the crack house in which these activities occurred which resulted in Mr. Hayden's conviction as well as those of Barry Brown were under the joint or constructed [sic] portion of both he [sic] and Brown. . . .

- 5 -

[T]he evidence clearly showed that and so they were in control of the house, the couch [in which the firearm was found] was part of the furniture in the house, and, of course, that's where the constructive possession comes in, so I don't think that's a good objection. And because he was in possession and under the guidelines the possession can be considered and that's where the 2 point enhancement comes in.

Mr. Hayden contends this statement fails to provide a factual basis warranting the enhancement, especially in light of the government's not responding to his objection at the sentencing hearing. He argues under 18 U.S.C. § 3553(c) the court must set forth its reasons for the decision and while the statement need not be highly detailed, this statement does not suffice. Citing *United States v. Robertson*, 45 F.3d 1423, 1449 (10th Cir. 1995), defendant argues because the court did not reference specific facts produced at trial to establish the residence was a crack house or that Mr. Hayden was in control of the house, the government failed to meet its burden of showing the temporal and spatial relationship between the weapon, the drug activity, and himself.

Although the government has the initial burden of establishing the temporal and spatial proximity of the firearm to the defendant, *United States v. Roederer*, 11 F.3d 973, 982 (10th Cir. 1993), once established, the burden shifts to defendant to show it was "clearly improbable" that the firearm was related to the drug transaction. *United States v. Contreras*, 59 F.3d 1038, 1040 (10th Cir. 1995) (citation omitted). Although the district court might have been more comprehensive, nonetheless, it tied the gun to the residence in which large quantities of crack were found. In *Contreras*, 283 pounds of marijuana were found in an attached garage. Approximately 25 feet from the garage, agents found a

loaded .22 caliber rifle under the couch in the living room. Defendant argued the rifle was present for "personal home protection." The trial court there gave the two-level enhancement stating it was highly probable the firearm was connected to the drug offense, citing the close spatial proximity between the gun and the marijuana, the unusual and potentially dangerous location of the gun, "and the fact that the weapon was immediately accessible and was loaded with a round in the chamber." *Id.* at 1040. We stated:

> The enhancement for weapons possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present unless it is clearly improbable that the weapon was connected with the offense. The government has the burden to prove by a preponderance of the evidence that a weapon was possessed in physical proximity to the offense. Once that burden is met, the burden is on the defendant to show that the increase should not apply because it is "clearly improbable" that the gun was connected to the offense.

*Id.* (citations omitted).

We review the factual findings made from the bench under a clearly erroneous standard. *United States v. Roberts*, 980 F.2d 645, 647 (10th Cir. 1992) (citation omitted). We see no such error. Consistent with *Contreras*, it would seem equally improbable here that the loaded firearm tucked into the couch was not connected to Mr. Hayden's drug activity.

Defendants contend they were entitled to a new trial because they were denied due process when Mr. Hayden's trial counsel was "intimidated" by the prosecuting attorney

- 7 -

and did not call a key defense witness.[1] This issue was raised initially in a post-trial motion filed pro se by Mr. Hayden. He claimed his attorney, Cyd Gilman, was persuaded by the prosecution to violate his Sixth Amendment confrontational right. As developed, the issue devolved into whether Ms. Gilman chose not to call the witness, Lloyd Boyd, because of the prosecutor's threat to call rebuttal witnesses.

A hearing was held and testimony was taken by the court, after which the motion was denied. We review the trial court's ruling for an abuse of discretion. *United States v. Haar*, 931 F.2d 1368, 1374 (10th Cir. 1991) (citation omitted).

At the hearing, Ms. Gilman testified that when the government concluded its case in chief, she informed the prosecutor, Mr. Deer, she intended to call Mr. Boyd as a defense witness. She believed Mr. Boyd would testify Mr. Hayden had a "legitimate job" and was working until 5:30 to 6:00 PM on the day he was arrested. According to her, Mr Deer:

> informed me that I might be opening up an area that they could raise in rebuttal if we called Mr. Boyd. He informed me that it could allow them to open the door regarding money laundering of drug proceeds that was occurring related to the business B&H, which was owned by Mr. Hayden and Mr. Brown.

During the course of the conversation, Detective Fettke "enumerated . . . a number of names of people who could be called to raise this issue."

---

[1] We assume Mr. Brown has joined this argument, although the burden has been carried by Mr. Hayden.

Ms. Gilman added she then weighed the value of Mr. Boyd's testimony against the "risk" of the government's calling rebuttal witnesses and recommended to Mr. Hayden Mr. Boyd should not be called. She advised him Mr. Boyd was not a "crucial witness, and she could produce the same evidence through the third defendant who was planning to testify. She therefore decided Mr. Boyd's testimony was not worth the risk. Mr. Hayden agreed. After this decision was made, the third defendant did testify and did state Mr. Hayden was at work on the day of his arrest.

In light of all these circumstances, we believe Mr. Hayden was not deprived of any right. The decision to call Mr. Boyd was obviously a valid tactical choice made by counsel, *see United States v. Glick*, 710 F.2d 639, 644 (10th Cir. 1983), and it was made with the consent of her client. Moreover, the evidence Mr. Boyd would have added was presented to the jury by another source. Most importantly, however, because Mr. Hayden was arrested at approximately 8:00 PM, the fact he was at work earlier in the day lacked significant probative value. This is not a circumstance that provokes a new trial for either defendant, and defendants' argument to the contrary is fatuous.

Mr. Hayden makes a rather quixotic argument that the names of the witnesses who would have provided the government's rebuttal evidence have never been disclosed. Therefore, he is entitled to a reversal of his conviction because he was denied due process. It is noteworthy, however, the government was not called upon at trial to

produce those names, and because they were strictly rebuttal witnesses, the government had no duty to disclose them. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

Finally, Mr. Brown, joined by Mr. Hayden, contends while all of the initial items predicating his arrest were in plain view, he had not given his consent for Officer Fettke to enter the residence or the bedroom. The fruits of that initial illegal entry formed the basis of the subsequently issued search warrant, invalidating that as well. Therefore, all the evidence should have been suppressed.

Although the court listened to all the stories, but found that of Officer Fettke more credible, Mr. Brown ignores the finding. He now urges: "following Mr. Haywood to Barry Brown's house for I.D. was nothing more than a ruse in order to search and get inside Barry Brown's home without legal and proper authorization."

The district court credited Officer Fettke's testimony about his need to verify the suspect's identification to determine whether there might be outstanding warrants or other violations of which they should know while investigating these specific traffic violations. Most importantly, it was undisputed **Mr. Haywood** suggested the officers follow him to North Harding Street! Once inside, Officer Fettke testified it was necessary to follow Mr. Haywood out of concern for the officer's safety.

The government asserts as proponents of the motion to suppress defendants failed to meet their burden of proof, citing *United States v. Moore*, 22 F.3d 241, 243 (10th Cir.

- 10 -

1994).  Further, no defendant contested the fact crack and cash were in plain view at the time the officers set foot in the house.

We judge the validity of a search warrant based on whether the totality of the circumstances in the affidavit would provide a neutral magistrate "a substantial basis for finding a fair probability that contraband or other evidence of a crime would be found." *United States v. McCarty,* 82 F.3d 943, 946 (10th Cir.1996) (citations omitted).  While we review the court's factual findings to determine if they are clearly erroneous, the ultimate determination of reasonableness under the Fourth Amendment is produced only after de novo review.  *United States v. Little*, 18 F.3d 1499, 1503 (10th Cir. 1994) (en banc).

After such a review, we conclude defendants failed to meet their burden of proof here.  *Rakas v. Illinois*, 439 U.S. 128, 130-31, n.1 (1978).  Defendants have not framed the reasonableness issue within the context of the misdemeanor traffic stop as the basis for the pursuit and entry.  While pursuit of an individual who has committed a misdemeanor will not support a warrantless entry and search of a residence under all circumstances, we have not been asked by defendants to consider that issue.

The plain fact is defendants lived and associated with Mr. Haywood who mindlessly invited the police to follow him to their crack cocaine supermarket.  They now want us to exonerate them by holding clearly erroneous the district court's finding that Haywood consented to the entry.  We decline the invitation.

**AFFIRMED.**


                              ENTERED FOR THE COURT


                              John C. Porfilio
                              Circuit Judge