**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Enrique VASQUEZ, Defendant–Appellant.**

**No. 91–2266.**

United States Court of Appeals, Tenth Circuit.

Feb. 3, 1993.

Order on Denial of Rehearing April 15, 1993.

**492**

David N. Williams, Asst. U.S. Atty. (Don J. Svet, U.S. Atty. and James D. Tierney, Asst. U.S. Atty., on the brief), Albuquerque, NM, for plaintiff-appellee.

Richard D. Esper, El Paso, TX, for defendant-appellant.

Before MOORE and BRORBY, Circuit Judges, and THEIS, District Judge.[*]

THEIS, District Judge.

Defendant/appellant Enrique Vasquez was convicted by a jury on charges of conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana. Vasquez appeals and presents the following five issues for review: (1) whether the district court erred in denying defendant his right to confrontation by limiting his cross examination of one of the government's rebuttal witnesses; (2) whether the district court erred in precluding the defendant from presenting surrebuttal evidence; (3) whether the evidence was sufficient to support a conviction for possession with intent to distribute more than 100 kilograms of marijuana; (4) whether the evidence was sufficient to support a conviction for conspiracy to possess with intent to distribute more than 100 kilograms of marijuana; and (5) whether the district court erred in refusing to give the defendant's requested jury instruction on the issue of identification. We affirm.

Vasquez and codefendant Dennis Mitchell were charged with conspiracy to possess with intent to distribute more than 100

[*] The Honorable Frank G. Theis, District Judge, United States District Court for the District of Kansas, sitting by designation.

kilograms of marijuana and possession with intent to distribute more than 100 kilograms of marijuana. Vasquez was tried alone in September 1990. The district court declared a mistrial when the jury was unable to reach a verdict. In July 1991, Vasquez and Mitchell were tried together. The jury convicted both defendants on both counts. Vasquez was sentenced to 66 months in custody to be followed by 4 years of supervised release. Mitchell is not a party to this appeal.

The evidence presented at trial, as summarized in the briefs,[1] discloses the following. On April 13, 1989, an agent with the Drug Enforcement Administration stationed at the El Paso International Airport intercepted a package containing $70,000 in cash. The package was addressed to Vasquez at his place of business, Total Tan, in El Paso, Texas. The package had been sent by Dennis Mitchell from his place of business, Sun Repair, in Kenton, Michigan. When contacted by law enforcement officials, Vasquez admitted that Mitchell had been a friend of his for 14 or 15 years. Vasquez claimed to have no knowledge why Mitchell would be sending him $70,000 in cash. Vasquez never made claim to the currency, which was apparently the subject of a forfeiture action.

On February 25, 1990, Mitchell flew from Michigan to El Paso, Texas and stayed with Vasquez until February 27, 1990. Mitchell then stayed at a Holiday Inn located approximately three miles from Vasquez' home.

On February 27, 1990, a man (later identified by store employees as Vasquez) purchased approximately $1,100 worth of lumber and building materials from O'Malley's Lumber in El Paso, Texas. Vasquez and Mitchell were identified by employees as being present in the yard when the lumber was loaded onto a trailer being pulled by a brown 1986 Ford pickup truck. O'Malley's Lumber employee Miguel Saldana identified Vasquez as the person who instructed him on loading the lumber. Vasquez wanted the lumber bound over some crates on the trailer.

On February 28, 1990 at approximately 10:00 a.m., Mitchell stopped at the United States Border Patrol checkpoint approximately 15 miles west of Alamogordo, New Mexico. Mitchell was driving the same

brown pickup pulling a trailer loaded with crates and lumber. When asked for a bill of lading, Mitchell handed the agent the sales receipt from O'Malley's Lumber. The agent noted that the lumber was bound over nine wooden crates. Mitchell stated that he did not know what was in the crates, as he had not been there when the trailer had been loaded. Mitchell consented to a search of the crates. Over 500 pounds of marijuana was found inside.

After Mitchell was arrested and booked into the Dona Ana County Jail, he was seen making a phone call. Toll records for Vasquez' home phone in El Paso reflected that a collect call was received from the Dona Ana County Jail on March 1, 1990. Toll records also disclosed 161 phone contacts between Mitchell's home phone and Vasquez' residence between January 1, 1989 and February 28, 1990 (the time period of the charged conspiracy).

O'Malley's Lumber employee Miguel Saldana identified a photo of the brown Ford pickup and trailer driven by Mitchell as being the same one he had loaded on February 27, 1990. Saldana testified that the photo (taken February 28, 1990) showed that the crates were in the same position on the trailer as when he had banded them on February 27, 1990. On April 18, 1990, Saldana and coworker Barton, the two O'Malley's Lumber employees who came into contact with Vasquez on February 27, 1990, identified Vasquez from a photo array.

The trailer used to carry the marijuana was purchased by Vasquez on April 21, 1988. Vasquez purchased the 1986 Ford pickup in December 1987.

Vasquez' defense raised the issues of alibi and misidentification. Vasquez asserted he had sold the truck and trailer to one Juan Ochoa Pena, that Ochoa bears a striking resemblance to him, that Ochoa went to the lumber yard with Mitchell, and that he (Vasquez) was elsewhere at the time the crime was being committed.

Vasquez' private investigator Streep testified that he knew a man named Juan Ochoa Pena or Juan Pena Ochoa (hereinafter "Ochoa") who bore an uncanny physical resemblance to Vasquez. Streep had taken a photo of Ochoa at an auto race in Juarez, Mexico. Following the earlier mistrial, Streep showed this photo to the two wit-

---

1. Defendant/appellant Vasquez failed to provide this Court with a trial transcript, but the

facts as summarized in the briefs are mostly undisputed.

nesses from the lumber yard. The briefs reflect that the parties disagree whether the lumber yard employees identified Ochoa as the person who purchased the lumber or whether the employees stated that Ochoa resembled the person who purchased the lumber.

Vasquez testified that he had sold both the brown Ford pickup and the trailer used to haul the marijuana to Ochoa on February 22, 1990. Vasquez produced a receipt which purported to document the sale of the trailer to Ochoa. Vasquez asserted that Ochoa never completed the title transfer on the Ford pickup. Vasquez also testified that he and Mitchell ran into Ochoa at a Ford dealership on February 25, 1990 and that Ochoa was in possession of the Ford. Vasquez asserts that he introduced Mitchell to Ochoa and also mentioned to Ochoa that Ochoa needed to pick up the title so that they could effectuate the change in ownership. Vasquez testified that the person known to him as Juan Ochoa was a citizen of Mexico, residing in Juarez, Mexico.

Vasquez presented several alibi witnesses. Vasquez presented evidence that he was neither in El Paso on February 27, 1990 nor in Alamogordo on February 28, 1990. Vasquez' brother, Joe Vasquez, testified that the two of them, along with another man, left El Paso on the morning of February 27, 1990 to drive to an auto race in Las Vegas, Nevada. The defense presented evidence that the truck broke down outside of Tucson and was towed to a repair shop on the evening of February 27, 1990. Two mechanics identified Enrique Vasquez as being present at the repair shop on the evening of February 27, 1990. Another brother of the defendant, Tony Vasquez, testified that the defendant Enrique Vasquez originally planned to fly to Las Vegas, Nevada on March 1, 1990; however, Tony testified that he flew in Enrique Vasquez' place.

During Vasquez' presentation of his defense, the court admitted a photograph of a Juan Ochoa which had been taken by a bail bondsman who had posted Ochoa's bond after Ochoa's arrest at the El Paso airport in 1988 for possession of marijuana. Both Vasquez and his investigator Streep were questioned by the government as to whether the individual in the photo was Juan Ochoa. Both responded that it was the same individual.

To rebut Vasquez' evidence regarding Ochoa's place of residence (Juarez) and citizenship (Mexican), the government called Border Patrol Agent Francisco Martinez. Agent Martinez had detained Juan Ochoa in March 1988 at the El Paso airport. The agent testified about information obtained from Ochoa concerning his height, date of birth, citizenship, and place of residence. The agent testified that the individual in the photo taken by the bail bondsman was the same person he detained on March 18, 1988. Agent Martinez testified that the person depicted in the photograph identified himself as Juan Pena, claimed United States citizenship, and gave an El Paso address. The date of birth and citizenship information was corroborated by a certified copy of Pena's birth certificate, which the court admitted into evidence.

The government presented rebuttal evidence of several airline reservations made on either February 27 or February 28, 1990 for a flight from El Paso to Las Vegas on February 28. The reservations were made by an Enrique Vasquez or a Rick Vasquez for an individual with the same name.

Vasquez asserts in his brief that he sought to present surrebuttal evidence that the El Paso telephone directory lists over 370 individuals with the last name of Vasquez and that 15 of those listed had the first name Enrique, Rick, Ricardo, or Richard.

Also in the government's rebuttal, the custodian of records from the auto race in Las Vegas testified that Enrique Vasquez did not register until March 3, 1990.

### Discussion

The first four issues presented by Vasquez involve evidentiary rulings by the district court and challenges to the sufficiency of the evidence. We are unable to rule on these issues for the reasons set forth below.

■ When the record on appeal fails to include copies of the documents necessary to decide an issue on appeal, the Court of Appeals is unable to rule on that issue. *United States v. Jenkins*, 904 F.2d 549, 556 (10th Cir.), *cert. denied*, 498 U.S. 962, 111 S.Ct. 395, 112 L.Ed.2d 404 (1990). This Court will decline to consider a claim in the absence of the appropriate documents in the record on appeal, since any discussion of such a claim would be speculation.

*United States v. Young,* 862 F.2d 815, 821 (10th Cir.1988) (failure to include affidavit and search warrant in the record on appeal precludes the review of the denial of a motion to suppress); *see United States v. Rascon,* 922 F.2d 584, 588 (10th Cir.1990) (when issue of the legality of appellant's detention by Border Patrol was raised during course of trial, failure to designate trial transcript precludes review), *cert. denied,* — U.S. ——, 111 S.Ct. 2037, 114 L.Ed.2d 121 (1991); *United States v. Brewer,* 630 F.2d 795, 803 (10th Cir.1980) (because affidavit for search warrant was not in the record, Court will not consider whether the affidavit was defective). "Without the record before us to substantiate the general allegations of error, we must defer to the trial court's decisions in these areas." *Moore v. Subaru of America,* 891 F.2d 1445, 1448 (10th Cir.1989).

■ Specifically, the failure to file a trial transcript precludes review of a conviction for sufficiency of the evidence. By failing to file a copy of the trial transcript as part of the record on appeal, the appellant waives any claims concerning the sufficiency of the evidence at trial. *United States v. Tedder,* 787 F.2d 540, 542 nn. 2–3 (10th Cir.1986); *see also United States v. Strand,* 617 F.2d 571, 578 (10th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980).

■ The failure to file a transcript also precludes review of the trial court's evidentiary rulings. Challenges to the admission of evidence will not be considered by the Court of Appeals in the absence of a record containing those portions of the transcript on which the appellant relies. *United States v. Mobile Materials, Inc.,* 871 F.2d 902, 906 & n. 1, *modified on reh'g,* 881 F.2d 866 (10th Cir.1989), *cert. denied,* 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990).

■ In the absence of a transcript or a statement of the parties in lieu of a transcript (Fed.R.App.P. 10(c)), the Court of Appeals will not review an issue, even for plain error. *United States v. Mobile Materials, Inc.,* 881 F.2d 866, 878 (10th Cir. 1989), *cert. denied,* 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990); *see also Mobile Materials,* 871 F.2d at 918.

■ The appellant is responsible for insuring that all materials on which he seeks to rely are part of the record on appeal. When the appellant asserts that his conviction should be reversed because of a particular error, and the record does not permit the us to evaluate the claim, we will generally refuse to consider it. *United States v. Hart,* 729 F.2d 662, 671 (10th Cir.1984), *cert. denied,* 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985); *see also Mobile Materials,* 871 F.2d at 918; *Mobile Materials,* 881 F.2d at 878.

This Court adopted a General Order effective October 31, 1990, governing the filing of the record on appeal. Order, *In re: Transcripts, Records on Appeal and Appendices,* at 10 (October 31, 1990). That Order provides in pertinent part:

> In all appeals from district courts, except pro se appeals and appeals in which a party is represented by an attorney appointed under the Criminal Justice Act, the record on appeal will be retained in the district court. Excerpts of the record must be filed in an appendix to appellant's brief. While non-essential parts of the record should not be included in an appendix (*See* Section B–3, Costs), it is counsel's responsibility to see that the record excerpts in the appendix are sufficient for consideration and determination of the issues on appeal and the court is under no obligation to remedy any failure of counsel to fulfill that responsibility.

Order at 5. The Order further provides:

> When an appeal is based upon a challenge to the admission or exclusion of evidence, the giving or failure to give a jury instruction, or any other ruling or order, a copy of the pages of reporter's transcript at which the evidence, offer of proof, instruction, ruling, or order and any necessary objection are recorded, must be included in the appendix.

Order at 7.

Vasquez has failed to provide this Court with a transcript of the proceedings below. The lack of a complete record precludes us from reviewing the first four issues raised by Vasquez, which involve evidentiary rulings and sufficiency of the evidence. We thus turn to the fifth and final issue raised by the appellant.

■ Vasquez claims error in the district court's refusal to give his requested jury instruction on the issue of identification. The district court instructed the jury as follows:

> In any criminal case the government must prove not only the essential elements of the offense or offenses

charged, as hereafter defined, but must also prove, of course, the identity of the defendant as the perpetrator of the alleged offense or offenses.

In evaluating the identification testimony of a witness you should consider all of the factors already mentioned concerning your assessment of the credibility of any witness in general, and should also consider, in particular, whether the witness had an adequate opportunity to observe the person in question at the time or times about which the witness testified. You may consider, in that regard, such matters as the length of time the witness had to observe the person in question, the prevailing conditions at that time in terms of visibility or distance and the like, and whether the witness had known or observed the person at earlier times.

You may also consider the circumstances surrounding the identification itself including, for example, the manner in which the defendant was presented to the witness for identification, and the length of time that elapsed between the incident in question and the next opportunity the witness had to observe the defendant.

If, after examining all of the testimony and evidence in the case, you have a reasonable doubt as to the identity of the defendant as the perpetrator of the offense charged, you must find the defendant not guilty.

Instruction 9, Aplt.Supp.App. at 2.

Vasquez submitted a proposed instruction which was substantially similar to the instruction given by the district court, but with the following addition to the third paragraph:

In addition, you may also consider whether any witness has ever previously made an identification of the defendant Enrique Vasquez from a photograph of an individual who may have resembled, but was not, the defendant Enrique Vasquez. If such a misidentification by any witness or witnesses has occurred, then you may give that evidence whatever consideration you feel is appropriate in determining whether the witness or witnesses in-court identification of the defendant Enrique Vasquez is credible.

Defendant's Instruction No. 22, Aplt.Supp. App. at 3–4. This particular language was rejected by the district court.

The refusal to give a particular jury instruction, even if the instruction is an accurate statement of the law, is within the discretion of the district judge. *United States v. Pena,* 930 F.2d 1486, 1492 (10th Cir.1991). To determine whether the district judge properly exercised that discretion, a reviewing court must examine the other instructions as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence. *Id.* While a defendant is entitled to an instruction regarding his theory of the case, the district judge has substantial discretion in formulating the instructions, so long as they are correct statements of the law and adequately cover the issues presented. *United States v. Haar,* 931 F.2d 1368, 1371 (10th Cir.1991); *see also United States v. Scafe,* 822 F.2d 928, 932 (10th Cir.1987) ("A defendant is entitled to jury instructions on any theory of defense finding support in the evidence and the law."). A defendant is not entitled to an instruction which lacks a reasonable legal and factual basis. *United States v. Haar,* 931 F.2d at 1371; *United States v. Bryant,* 892 F.2d 1466, 1468 (10th Cir. 1989), *cert. denied,* 496 U.S. 939, 110 S.Ct. 3220, 110 L.Ed.2d 667 (1990). Nor is a defendant entitled to any specific wording in the instructions. *Bryant,* 892 F.2d at 1468.

We cannot examine the instructions as a whole, since they are not contained in the record on appeal. Vasquez requested and received an instruction on his theory of the case. The instruction given by the district court was a correct statement of the law and fairly and adequately covered the issues presented. Vasquez' proposed instruction singled out one aspect of the identification testimony—the alleged confusion regarding the photo of Ochoa—to the exclusion of all the other matters impacting on the credibility of the identification witnesses. The instruction given by the district judge allowed the jury to consider all the identification evidence. The district court acted well within its discretion in rejecting the specific wording submitted by Vasquez. The instruction given adequately presented the theory of Vasquez' defense to the jury.

In conclusion, we note that this was purely an identification case. Vasquez presented evidence of an alibi as well as evi-

dence that someone else was the perpetrator. The jury heard all the evidence and made credibility determinations based thereon. The jury obviously rejected Vasquez' alibi and his defense of misidentification. The identification instruction given by the district court was a correct statement of the law. On the record before us, we find no error.

AFFIRMED.

## ORDER ON PETITION FOR REHEARING

### April 15, 1993.

THEIS, District Judge.

Appellant Vasquez petitions for rehearing, raising the four issues which the court previously declined to consider for lack of a proper record on appeal. Appellant now seeks to provide the court with the transcript excerpts which were previously omitted from the record.

Rule 40 of the Federal Rules of Appellate Procedure governs the filing and contents of a petition for rehearing. That rule provides in pertinent part: "The petition shall state with particularity the points of law or fact which in the opinion of the petitioner the court has overlooked or misapprehended...." Fed.R.App.P. 40(a).

In *Westcot Corp. v. Edo Corp.*, 857 F.2d 1387 (10th Cir.1988), this court discussed the standards which we apply to petitions for rehearing:

Consideration of appellant's petition for rehearing discloses no issues the panel has overlooked or misconstrued in its order and judgment. The petition attempts to inject into the case facts beyond the record and adds what is essentially a reiteration of arguments already advanced in the briefs. In that form the petition is neither helpful nor persuasive. To the contrary, such a document is wasteful of the court's overburdened time and the appellant's funds.

Tenth Cir.R. 40.1 sets the tone for petitions for rehearing, but it is unfortunately overlooked by far too many practitioners. When we stated a "petition for rehearing should not be filed routinely," we were not making a suggestion; we were setting a standard to which counsel must adhere.

A petition for rehearing must not be regarded by the practicing bar as another pleading which should be filed by the losing side in every appeal. This canon is particularly true when the petition consists of evidence not presented in the appeal or the equivalent of a restatement of arguments presented in the brief. Cases are not decided by timid panels who are in doubt of the results reached. *Attempts to overcome deficiencies in the record or reiteration of previously rejected legal theories will not prompt a change of mind.*

*Id.* at 1387–88 (emphasis added).

A petition for rehearing was not designed to be "a crutch for dilatory counsel, nor, in the absence of a demonstrable mistake, to permit reargument of the same matters." *United States v. Doe*, 455 F.2d 753, 762 (1st Cir.) (citation omitted), *vacated on other grounds sub nom. Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); *see also United States v. Smith*, 781 F.2d 184, 184 (10th Cir.1986). Appellant's efforts to overcome the deficiencies in the record are too late.

As we stated in our previous opinion, there appeared to be little dispute between the parties on the material facts. Nor did there appear to be significant disagreement about the nature of the trial court's evidentiary rulings in which the trial court had discretion. This case remains an identification case in which the jury, as judges of the credibility of the evidence, made its determination.

Appellant's petition for rehearing is hereby DENIED.