**UNITED STATES COURT OF APPEALS**
**Filed 6/27/96**
**TENTH CIRCUIT**

CATHY HENRY, individually;
CATHY HENRY, Administratrix of
the Estate of Robert France, a
deceased minor,

     Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA,
Acting through the United States Air
Force and Tinker Air Force Base,

     Defendant-Appellee.

No. 95-6016
(D.C. No. CIV-91-831)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **BRORBY**, and **EBEL**, Circuit Judges.

Cathy Henry brought this claim against the United States pursuant to the

Federal Tort Claims Act, 28 U.S.C. § 1346, for medical malpractice resulting in

the wrongful death of her ten-year-old son. The case was tried to a United States

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Magistrate by mutual agreement and consent of the parties under 28 U.S.C. § 636(c). The Magistrate found that no employee or representative of the United States committed any acts of negligence. Ms. Henry appeals, claiming that: (1) the Magistrate abused her discretion by failing to permit the untimely endorsement of an expert witness; and (2) the Magistrate erroneously shifted the doctor's burden of proof and erroneously found that Ms. Henry was contributorily negligent. We have jurisdiction pursuant to 28 U.S.C. §§ 636(c)(3) and 1291, and now AFFIRM.

I.

In her Memorandum Opinion and Order, the Magistrate found the following facts. Beginning in May of 1989, Ms. Henry's son Robert France repeatedly complained of nausea and vomiting. Ms. Henry's husband and Robert's stepfather, David Henry, took Robert to the Tinker Air Force Base Hospital and Clinics ("TAFB"), which referred Robert to Dr. Flores, a pediatric gastroenterologist. On July 5, 1989, Dr. Flores examined Robert in the Gastrointestinal Clinic at Oklahoma Children's Memorial Hospital. (Appellant's App. 2-c # 5). Robert's medical history, obtained from David Henry, indicated that for six weeks, Robert had suffered abdominal pain and vomiting, usually in the morning, followed by a headache that disappeared after Robert lay down. There is no record that Dr. Flores conducted a fundoscopic examination, which

- 2 -

apparently could have disclosed increased intracranial pressure (Id.).[2]  Among several potential diagnosis in his initial assessment, Dr. Flores included increased intracranial pressure, although he noted it as unlikely.  Dr. Flores prescribed Zantac and Maalox for the treatment of gastritis and recommended that Robert return in two weeks.  (Appellant's App. 2-d, # 5)

Robert was not taken to his July 24, 1989 follow-up appointment at the Gastrointestinal Clinic. (Id. at # 6).  On August 3, 1989, David Henry departed for a one year assignment in Korea, leaving his family in Oklahoma.  (Id. at # 7).  Robert was taken to Dr. Flores again on August 21, 1989, after his mother found him suffering from severe vomiting.  Dr. Flores found that Robert's gastritis was much improved, and told Ms. Henry that Robert's headaches were caused by the vomiting.  Ms. Henry was told to call if Robert's condition worsened; otherwise, they were to return in one week. (Appellant's App. 2-e, # 8).  Robert did not return the next week.  (Id. at # 9).

On September 18, 1989, Ms. Henry appeared for an appointment at the United States Air Force Hospital, because Robert was complaining of headaches.  She was told that the doctor with whom Robert's appointment was scheduled was

---

[2]    A fundoscopic examination is an examination of the fundus of the eye, or the part of the eye opposite the pupil.

ill, and that she would need to reschedule.  (Id. at # 10).  She rescheduled for September 21, but missed the appointment. (Id. at # 11).

Ms. Henry, concerned that Robert's symptoms were caused by his stepfather's absence, took Robert to the mental health  department of TAFB on the morning of October 6, 1989.  (Id. at # 13).  The examining physician made a provisional diagnosis of adjustment disorder and depressed mood.  Ms. Henry scheduled an appointment for Robert at the Family Clinic, then took Robert to school. (Appellant's App. 2-f, # 14-15).  Later that morning, Robert began vomiting and complaining of a headache.  Ms. Henry was called and drove to the school to pick him up.  While in her car, Robert appeared to have a seizure.  Ms. Henry took Robert to the emergency room of TAFB. (Id. at # 16).

Robert was examined by Dr. Milham, an emergency room physician, at 11:45 a.m.  (Id. at # 17).  Robert's chief complaints, as entered in the emergency room record, were vomiting, abdominal pain and a possible seizure.  The only medication Robert was recorded to be taking was Zantac.  (Id. at # 18).  Although Ms. Henry testified at trial that she told Dr. Milham about Robert's history of headaches, the hospital records referenced a history of abdominal pain, vomiting, and loss of appetite and weight.  (Appellant's App. 2-f to 2-g, # 19).  Dr. Milham recorded Ms. Henry's concern that her husband's leaving for Korea may have affected Robert.  While Dr. Milham's report included the fact that the school had

called Cathy that day because of Robert's vomiting and headache, no history or pattern of headaches was recorded by Dr. Milham. (Id.)

Dr. Milham advised Ms. Henry that Robert was "malingering." (Appellant's App. 2-g, # 21). Ms. Henry insisted, however, that a pediatrician be called, and Dr. Milham called the defendant, Dr. Cosby, at 12:50 p.m. and requested that she come to the emergency room. (Id. at # 22).[3] Dr. Cosby arrived in the emergency room at approximately 1 p.m. She had not previously seen Robert or Ms. Henry. (Appellant's App. 2-h, # 25). Before examining Robert, Dr. Cosby talked with Dr. Milham about the patient history, and his examination and findings. Among other things, Dr. Milham repeated his observation that he believed Robert was malingering. (Id. at # 26).

The parties dispute whether Dr. Cosby then took her own patient history from Ms. Henry; the Magistrate found that the weight of the evidence supported that she did. (Appellant's App. 2-i, # 28). In any event, the Magistrate found no evidence that Ms. Henry told Dr. Cosby about Robert's headaches while in the emergency room. (Id. at # 30). Dr. Cosby ordered the initiation of intravenous fluids to address Robert's dehydration. She attempted several times to perform a fundoscopic examination but was unable to do so because Robert had become

---

[3] Dr. Cosby was a civilian pediatrician under contract with the United States to provide pediatric services for Champus beneficiaries at Tinker Hospital. (Appellant's App. 2-g at # 23).

combative.  Dr. Cosby determined that sedating Robert for the purpose of conducting a fundoscopic examination would interfere with observation of Robert's condition.  (Id. at # 31-33).

After Robert was taken to a hospital room at about 1:45 p.m., Dr. Cosby wrote her orders regarding Robert's treatment and then returned to her patients in the pediatric clinic.  (Appellant's App. 2-j, # 34).  By this time, Dr. Cosby had diagnosed dehydration as an acute problem and her differential diagnosis included a drug overdose, gastritis, gastroenteritis and/or a concussion.  (Id. at  35).  The pediatric admission assessment entered in the record at 2:45 p.m., after Robert had been transferred to the medical/surgical floor from the emergency room, included a history obtained from Ms. Henry.  The admission assessment form indicated no problems with headaches or other neurological symptoms.  (Id. at # 38).[4]

Dr. Cosby checked on Robert at 4:15 p.m. and again at approximately 8:30 p.m.  (Appellant's App. 2-j to 2-k, # 40-41).  At the latter visit, Dr. Cosby reviewed drug screen results and discovered that in addition to Zantac (the only

---

[4]    Although Dr. Flores' records of Robert's visits to the Gastrointestinal Clinic were not part of the Tinker Clinic record and were therefore not part of the record before Dr. Cosby, Dr. Flores' consultation report regarding Robert's first visit to him on July 5, 1989, was included in the Tinker Clinic record.  No reference to headaches was made by Dr. Flores in that report.  (Appellant's App. 2-k, # 42)

medication reported on Robert's emergency room history), the ingredients found in Excedrin were present in Robert's system. Because of this inconsistency, Dr. Cosby took additional history from Ms. Henry sometime between 9 and 10 p.m., at which time Dr. Cosby learned for the first time about Robert's "pattern" headaches. (Appellant's App. 2-k, # 43-44). Based on this additional history, Dr. Cosby added the possibility of an intracranial lesion to her differential diagnosis and scheduled a CT scan at Midwest City Regional Hospital for the following morning. (Appellant's App. 2-l, # 45 - 46).[5]

After a subsequent blood test eliminated diabetic ketoacidosis as a potential diagnosis, the primary remaining diagnosis was an intracranial lesion. Dr. Cosby therefore decided to transfer Robert to Children's Memorial Hospital, a facility where Robert could obtain not only a CT scan but also all the services he would need should an intracranial lesion be found. (Appellant's App. 2-l to 2-m, # 50-51). After arranging a non-emergency transfer for Robert, and based on a preliminary diagnosis of intracranial lesion, Dr. Cosby ordered the administration of Mannitol and Decadron. (Id. at # 52-53). Approximately thirty minutes later, however, at 12:10 a.m. on October 7, 1989, Robert suffered a respiratory arrest. He was resuscitated and then transferred to Children's Hospital on an emergency

---

[5]     TAFB did not have the capability to perform a CT scan. (Appellant's App. 2-l, # 46).

- 7 -

basis.  A CT scan of Robert's head revealed a posterior fossa defect consistent with a tumor.  (Id. at # 55-56).  Robert died approximately three hours later, at 3:15 a.m. on October 7, 1989.  The immediate cause of death was recorded as increased intracranial pressure due to brain tumor, posterior fossa. (Id. at # 57-58).

Ms. Henry refused to allow an autopsy at the time of Robert's death and has continued to refuse to allow an autopsy throughout the litigation of her claim. The Magistrate found that only an autopsy could have determined the type of brain tumor Robert had, and held that without this information no determination could be made to a reasonable degree of medical certainty regarding Robert's prognosis had the tumor been discovered earlier.  Thus, it was not possible to determine whether Robert's death could have  been prevented or even delayed. (Id. at # 59-60).  The Magistrate further found that, based on the evidence presented at trial, Dr. Cosby acted within the national standard of care for a pediatrician.  (Appellant's App. 2-r, # 11-12).[6]  The Magistrate held that Ms. Henry failed to prove by a preponderance of the evidence that: (1) any negligence or omission on the part of Dr. Cosby was a direct cause of the death of Robert; or

---

[6] The district court also determined that Dr. Cosby was an employee of the United States such that any negligence on her part would be attributable to her employer.  (Appellant's App. 2-q, # 9)

(2) that the patient care system and policy of TAFB was negligent in design or function.  (Id. at # 12-14).

## II.

Ms. Henry's first claim of error is that the Magistrate abused her discretion by excluding an untimely identified additional expert witness, Dr. Gabriel. "When there exists a properly drawn, detailed pre-trial order, a trial court's determination that certain facts or issues must [or should not] be excluded from trial on the basis of a pre-trial order may be reversed only if there is an abuse of discretion."  Grant v. Brandt, 796 F.2d 351, 355 (10th Cir. 1986) (citation omitted).[7]  Where a district court establishes a reasonable deadline for designating expert witnesses, "we are loath to interfere with the court's enforcement of that order.  Adherence to such scheduling orders are critical in maintaining the integrity of judicial proceedings."  1488, Inc. v. Philsec Investment Corp., 939 F.2d 1281, 1289 (5th Cir. 1991).  See also Fed. R. Civ. P.

---

[7]    In its opening brief, the United States argued that Ms. Henry did not preserve this issue on appeal because of failure timely to object and failure to provide a specific offer of proof.  At oral argument, however, it was conceded that Ms. Henry had satisfied the standard of United States v. Mejia-Alarcon, 995 F.2d 982, 986 (10th Cir.)("[A] motion in limine may preserve an objection when the issue (1) is fairly presented to the district court, (2) is the type of issue that can be finally decided in a pretrial hearing, and (3) is ruled upon without equivocation by the trial judge."), cert. denied, 114 S. Ct. 334 (1993)  We therefore review the Magistrate's action for abuse of discretion rather than for plain error.

16(f) (trial court may sanction failure to obey scheduling order by excluding evidence). Ms. Henry must therefore demonstrate that the Magistrate's denial of her untimely application was an abuse of discretion, which we have defined as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." United States v. Hernandez-Herrera, 952 F.2d 342, 343 (10th Cir. 1991).

We note at the outset that little of the trial record has been designated on appeal. The following sequence of events is discernible from the portion of the record provided: The complaint initiating this lawsuit was filed on June 10, 1991. (Appellant's App. 1-d). The original deadline set by the Magistrate for submission of plaintiff's expert witness list was February 3, 1992. (Appellant's App. 1-e). On that date, Ms. Henry filed a motion to extend the deadline. The Magistrate granted the motion and extended the deadline to February 24, 1992. (Id.) On February 24, Ms. Henry filed with the trial court a list of the following expert witnesses: Dr. Cosby; Dr. Alvin Osburn, who certified Robert's death at Children's Memorial Hospital and who would testify as to cause of death; Dr. Marc Hille, who would testify regarding the negligence of the defendants and the nature of the tumor; Dr. Robert Cannon, a pediatric gastroenterologist who would testify regarding the negligence of the defendants and the prognosis with treatment of the tumor; and Dr. Deborah Ablin, a pediatric radiologist who would evaluate the CT scan and other surrounding facts as to the prognosis with or

- 10 -

without treatment. See Br. of Appellee at 10-11 (summarizing witness list). Trial was scheduled for April 21, 1992. (Appellant's App. 1-f).

In late March of 1992, Ms. Henry twice moved to have the discovery cutoff date extended. (Appellant's App. 4-a and 5-a). On March 31, the Magistrate granted an extension of that deadline until April 7. (Appellant's App. 9-a). The order stated that "[t]he other deadlines, including the trial date of April 21, will remain in place, unless by or before April 10, 1992, defendants request the trial dates be stricken." (Appellant's App. 9-b). As to witnesses, however, the order noted that "the time for exchange of witness lists has long since passed, and no request was made or extension granted [as] to that deadline." (Id.)

On April 16, 1992, a pretrial hearing was conducted in chambers, at which time Ms. Henry orally moved to amend her pleadings and add an additional party. (Appellant's App. 11). She was instructed to file a written motion, which she did on April 27. (Appellant's App. 6-a). The docket sheet shows no activity between May 1, 1992 and September 24, 1992, when the United States filed a motion to dismiss for failure to prosecute the action. (Appellant's App. 1-j). On September 30, 1992, the Magistrate denied the motion to dismiss and granted Ms. Henry's April 27 motion to amend the complaint. (Id.)

On October 14, 1992, Ms. Henry filed her amended complaint. The amended complaint added no new parties but alleged that Dr. Cosby's negligence,

attributable to the United States, caused Robert's death.  (Appellant's App. 14).

The Magistrate entered a scheduling order on January 29, 1993, setting trial for

June 22, 1993.  The scheduling order did not set a new date for submitting expert

witness lists.  (Appellant's App. 15-a).

On February 2, 1993, nearly one year after the already extended deadline

for designation of witnesses had passed, Ms. Henry moved to endorse Dr. Gabriel

as an expert witness.  (Appellant's App. 7-a).  She asserted that Dr. Gabriel, a

pediatric neurologist, would testify as to the prognosis of the tumor and the

negligence of Dr. Cosby.  (Id. at 7-c).  The Magistrate denied the motion, writing:

> The delays, extensions, and problems in concluding discovery in this case are documented in the file and will not be summarized again.  Suffice it to say that this Court has given Plaintiff every opportunity to develop and present her case. . . .
> Certainly Plaintiff and her counsel have known since this action was filed that Robert France died from a brain tumor.  Thus, it is clear that from the outset of this litigation Plaintiff knew she would have to present the type of testimony she now claims only Dr. Gabriel can provide.  In addition, when Plaintiff filed her Witness List and her Final Contentions on February 24, 1992, she identified [four] doctors as experts . . . She stated that these individuals would testify as to the types of tumors, treatability, and survival rates, the very issues on which she now wants to add a new witness. . . .  Obviously, Plaintiff was then satisfied that these four doctors were proper experts to testify regarding tumors, and there is no indication that these individuals cannot now be present . . . at the trial of this action.  Even though Dr. Cosby may not testify in support of Plaintiff's cause, she and the other three doctors are apparently available.
> It is difficult for this Court to understand how Plaintiff continues to re[l]y on Dr. Cosby's alleged change of testimony about which Plaintiff had at least some indication as of January, 1992, and about which she was clearly apprised by March, 1992, when Dr. Cosby's deposition was taken.  Now almost a year later after the Court has already once allowed additional

time for Plaintiff to depose one of its own listed witnesses, Plaintiff asks to add yet another witness whose testimony is alleged to cover issues known to Plaintiff since before filing this action and about which several available and previously listed witnesses are to testify according to Plaintiff's statements to the Court. . . . Nothing that Dr. Cosby has said or done nor any ruling by this Court alters the responsibility of Plaintiff's counsel to properly and timely prepare her case which preparation includes finding the appropriate witnesses including experts in a timely fashion. Therefore, it is the finding of this Court that Plaintiff has failed to show good cause for the late endorsement of Dr. Gabriel.

Magistrate's Order, dated April 20, 1993 (Appellant's App. 17-b to 17-d).

On appeal, Ms. Henry argues that her untimely attempt to designate Dr. Gabriel was justified by two factors. First, her primary expert witness had a sudden change of heart after the deadline to designate witnesses had already expired. Second, Ms. Henry asserts that she relied on the Magistrate's indications that when the trial was rescheduled, new deadlines would be set.

Ms. Henry alleges that she initially expected Dr. Cosby to be her primary witness against the United States, and that Dr. Cosby represented to her that she would testify on Ms. Henry's behalf. On March 3, 1992, Ms. Henry deposed Dr. Cosby for the first time. Ms. Henry alleges that at the deposition, Dr. Cosby reversed her position and decided she would not testify. Crucial to Ms. Henry's argument is that Dr. Cosby suddenly and unexpectedly recanted at her deposition, which occurred after the February 24, 1992 deadline to designate witnesses had already expired.

Ms. Henry has not provided this court with a copy of Dr. Cosby's deposition testimony from March 3, 1992.[8]  "The appellant, as the party claiming the district court erred, bears the 'responsibility to order and provide all portions of the transcript necessary to give the court of appeals a complete and accurate record of the proceedings insofar as such proceedings relate to the issues raised on appeal'." United States v. Davis, 60 F.3d 1479, 1481 (10th Cir. 1995) (citing 10th Cir. R. 10.1), cert. denied, 116 S. Ct. 1829 (1996).  "When the record on appeal fails to include copies of the documents necessary to decide an issue on appeal, the Court of  Appeals is unable to rule on that issue." United States v. Vasquez, 985 F.2d 491, 494 (10th Cir. 1993).  Because of the inadequate record on appeal, we cannot properly consider this claim.

Moreover, we note that the portion of the record which we do have does not support Ms. Henry's account of the timing.  Indeed, Ms. Henry's March 20, 1992 application to extend the discovery cutoff deadline directly contradicts her argument:

---

[8]    The Appellant's Appendix does contain pages 192, 207, 199 and 212 of a court reporter's transcript labeled "Donna Raye Cosby, M.D." (Appellant's App. 40-43).  Appellant identifies these  as "Dr. Cosby's Deposition Testimony," without specifying whether this testimony was from Dr. Cosby's March 3, 1992 deposition or her supplemental deposition of February 2, 1993.  To the extent that we may consider such random excerpts of testimony, these pages do not address the issue of when and for what reason Dr. Cosby decided not to testify on Ms. Henry's behalf.

Dr. Cosby was the primary expert for the plaintiffs until the 28th day of January, 1992, when she stated that she no longer intended to be the plaintiff's expert as she did not know what the accepted standards of care were. . . . Dr. Cosby recanted [her previous] position on the above date when the existing deadlines were very close.[9]

(Appellant's App. 4-a to 4-b)(emphasis added).

January 28, 1992 was not only before the final deadline to designate expert witnesses had passed, but before an extension as to that deadline from February 3 to February 24 was requested and granted to Ms. Henry. Ms. Henry now protests, as she did before the Magistrate, that Dr. Cosby's January 28, 1992 indication that she would not testify was only tentative, and that she believed Dr. Cosby would testify up until the deposition of March 3, 1992. See Plaintiff's Petition to Amend Complaint, dated April 27, 1992 (Appellant's App. 6-b to 6-c). That Ms. Henry did in fact continue to rely on Dr. Cosby's testimony is supported by the fact that Dr. Cosby's name was evidently on the witness list submitted on February 24, 1992. (See Magistrate's Order of 4/20/93, Appellant's App. 17-c). Nonetheless, Ms. Henry has provided to us no facts which reasonably could support her continued belief that Dr. Cosby would testify on her behalf. Ms. Henry's second justification for the untimely endorsement is that the Magistrate misled her into

---

[9] Moreover, in her March 31, 1992 order granting a discovery extension, the Magistrate noted that Ms. Henry "could have moved somewhat more expeditiously to fill the void left by Dr. Cosby's change of position on January 28." (Appellant's App. 9-a)(emphasis added).

- 15 -

believing that the deadline for witness list exchange would be extended. Ms. Henry asserts that at the pretrial conference on April 16, 1992, the Magistrate made oral statements which indicated that if the trial were rescheduled, new deadlines would be set for parties to submit witness lists. These oral assurances were buttressed by the Magistrate's written order of March 31, 1992, which stated that various deadlines would remain in place unless the trial date was stricken. Because the trial was rescheduled, Ms. Henry argues, she justifiably assumed that all deadlines were to be reconsidered.

Again, Ms. Henry provides us with no record of the Magistrate implying an extension of witness deadlines. The courtroom minutes of the April 16 conference make no reference to any deadlines. (Appellant's App. 11). Moreover, the written order of March 31, 1992 upon which Ms. Henry ostensibly relied states: "[b]ecause Defendant United States makes reference to the Plaintiff using this extension of time to 'shop for witnesses,' the Court would remind the parties that the time for exchange of witness lists has long since passed, and no request was made or extension granted [as] to that deadline." (Appellant's App. 9-b). Assuming that as to this issue we have been provided with all relevant portions of the record, we cannot conclude that this order left Ms. Henry with any reasonable expectation that she was to be given additional time to locate expert witnesses.

Ms. Henry's remaining claim of error is that the Magistrate improperly shifted the doctor's burden of obtaining a detailed and intelligent neurology history of pattern headaches away from the doctor and on to her, and thus erroneously held that Ms. Henry was contributorily negligent in causing the death of her child. Nowhere in the Magistrate's order, however, is there a finding of contributory negligence on the part of Ms. Henry. The Magistrate's finding of fact number 30 simply states: "There was no evidence that Cathy Henry told Dr. Cosby about Robert's headaches while in the emergency room." (Appellant's App. 2-i). This was a finding of fact by the Magistrate which was ultimately relied upon, along with other evidence, to conclude that Dr. Cosby was not negligent. Ms. Henry has provided us with no portion of the record which would suggest that the Magistrate made any finding of contributory negligence or improperly shifted any burdens.

Ms. Henry also recites testimony from the record which she argues indicates that Dr. Cosby departed from accepted medical standards in delivering care to Robert. We review the factual findings underlying a trial court's rejection of a negligence claim in a Federal Torts Claim action for clear error. Colorado Flying Academy, Inc. v. United States, 724 F.2d 871, 879 (10th Cir. 1984), cert. denied, 476 U.S. 1182 (1986) However, "[i]n the absence of a transcript . . . the

Court of Appeals will not review an issue, even for plain error." <u>Vasquez</u>, 985 F.2d at 495. <u>See</u> <u>also</u> Fed. R. App. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion."). Ms. Henry has not provided us an adequate record from which we may conclude that the Magistrate's findings constituted clear error. Accordingly, we must defer to the Magistrate's conclusion that there was no negligence on the part of the United States or any of its employees.

IV.

The incomplete record on appeal does not support Ms. Henry's claim that the Magistrate abused her discretion in excluding Dr. Gabriel's testimony, nor is it sufficient to allow us to review whether the factual findings underlying the Magistrate's determination of no negligence were clearly erroneous. Although the events underlying this cause of action were tragic, under the law we must AFFIRM the Magistrate's judgment.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge