**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 8, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES RALPH DAWSON, JR.,

        Plaintiff - Appellant,

v.

SHANE JOHNSON; JOHN BOWKER,

        Defendants - Appellees.

No. 07-1116

D. Colo.

(D.C. No. 03-cv-466-ZLW-BNB)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

James Ralph Dawson, Jr., a state prisoner appearing pro se and *in forma pauperis* (*ifp*), appeals from the district court's order granting partial summary

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

judgment in favor of certain defendants.[1]  He also appeals from various alleged

trial errors.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the

order of partial summary judgment and dismiss the remainder of Dawson's appeal

due to an inadequate record.

## I.  BACKGROUND

Dawson is incarcerated in the Limon Correctional Facility, which is

operated by the Colorado Department of Corrections (CDOC).  Dawson filed a

pro se complaint under 42 U.S.C. § 1983, alleging he received a prison

disciplinary conviction in retaliation for exercising his First Amendment right to

file grievances concerning prison conditions.  Dawson named as defendants the

CDOC and five CDOC employees: associate warden Al Estep and correctional

officers John Bowker, Shane Johnson, Endre Samu and Danny Adams (misnamed

as Gary Adams).  Dawson sought injunctive relief and monetary damages.

Dawson alleged he filed a series of grievances regarding the different

privileges afforded to inmates who were employed as compared to inmates who

were not employed.  He claims that three days after meeting with Estep to discuss

the discrepancy, Bowker asked him to write a letter indicating he would drop any

grievances and potential lawsuits in exchange for a particular job.  Dawson

alleges Bowker told him Johnson had instructed Bowker to make this proposal.

---

[1]  On account of Dawson's pro se status, we liberally construe his filings, but hold him to the same rules of procedure as other litigants.  *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

Dawson wrote the letter and was then charged with a prison infraction – bribery. He was tried by a prison disciplinary board. The hearing was chaired by Samu and Adams acted as the prosecuting officer. Dawson was convicted and sentenced to ten days in punitive segregation. He appealed his conviction internally, and the conviction was affirmed by Estep.

After limited discovery, the defendants filed a motion for partial summary judgment, arguing, *inter alia*, the CDOC was entitled to immunity under the Eleventh Amendment and Samu, Adams and Estep were entitled to summary judgment in their individual capacities because they did not personally participate in the alleged conspiracy to retaliate against Dawson. The motion was referred to a magistrate judge for a report and recommendation (R&R). The magistrate concluded the CDOC was immune under the Eleventh Amendment and Samu, Adams and Estep were entitled to judgment in their individual capacities based on lack of personal participation. The magistrate also concluded Samu, Adams and Estep were entitled to Eleventh Amendment immunity in their official capacities to the extent Dawson sought monetary damages. Dawson objected to the R&R. In their response to Dawson's objections, the defendants agreed with the magistrate's conclusions and also argued Samu, Adams and Estep were entitled to judgment in their official capacities even as to Dawson's request for injunctive relief. They reasoned that because there was no evidence these individuals retaliated against Dawson, there was nothing to enjoin. The court adopted the

magistrate's R&R and further concluded Samu, Adams and Estep were entitled to judgment in their official capacities as to Dawson's request for injunctive relief.

The matter was then set for trial against Johnson and Bowker. The court granted Dawson's request for appointed counsel, and two attorneys entered their appearances on his behalf. Both Dawson and the defendants filed a motion in limine concerning the admissibility of Dawson's prior convictions.[2] Dawson contended the convictions were inadmissible because of their age and were not relevant; the defendants contended they were admissible for purposes of attacking Dawson's credibility. The court heard argument and held the murder and assault convictions were inadmissible but the other convictions were admissible for impeachment. Also prior to trial, Dawson filed a pro se motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The court dismissed Dawson's motion without prejudice, concluding it was premature.

Trial began on March 12, 2007, and continued for four days. The jury returned a verdict in favor of Johnson and Bowker and judgment was entered on March 16. Dawson filed a pro se notice of appeal and a pro se "renewed" Rule 50(b) motion for judgment as a matter of law. The motion was denied. Dawson then submitted a motion and affidavit for leave to proceed *ifp* on appeal pursuant

---

[2] Dawson had been convicted of murder, attempted murder, assault, criminal impersonation, forgery, criminal possession of a forged instrument, criminal possession of a credit device, theft and attempted theft. Some of these convictions were over twenty years old.

to 28 U.S.C. § 1915 and Rule 24 of the Federal Rules of Appellate Procedure. The court granted Dawson leave to proceed *ifp* but denied his request for a free transcript. The court stated: "Plaintiff may pay the estimated transcript fee in advance or make his own arrangements with the court reporter to pay for the cost of the transcript." (R. Doc. 176 at 3.)

Appearing pro se in this Court, Dawson contends the district court erred in four respects: (1) by granting summary judgment to Samu, Adams and Estep based on their lack of personal participation in the alleged conspiracy; (2) by improperly instructing the jury; (3) by denying his post-verdict motion for judgment as a matter of law; and (4) by admitting evidence of his prior convictions, some of which were twenty-five years old.

## II. DISCUSSION

A.      Summary Judgment

The district court granted summary judgment in favor of Samu, Adams and Estep because Dawson failed to produce any evidence indicating these defendants were personally involved in the alleged conspiracy to retaliate against him. Dawson contends this was error. "We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court under Fed. R. Civ. P. 56(c)." *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted). "Summary judgment should not be granted unless the evidence, viewed in the

light most favorable to the party opposing the motion, shows there are no genuine issues of material fact and the moving party is due judgment as a matter of law." *Id.*

A defendant cannot be held liable in a § 1983 action unless he or she caused or personally participated in the alleged constitutional violation. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). A respondeat superior theory of liability cannot form the basis of a § 1983 claim. *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983). To establish a claim for retaliation, a plaintiff must show that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990) (quotations omitted). Dawson introduced no evidence to show that, but for a retaliatory motive on the part of Samu, Adams and Estep, he would not have been convicted of bribery.

Dawson was asked, through interrogatories, to identify and describe the facts that supported his claims against Samu, Adams and Estep. As to Samu, Dawson stated: "Endre Samu . . . found me guilty of bribery for participating in the prison grievance process. I explained to him that I was exercising a constitutional right to exhaust my prison remedies and petition for grievance and access the courts. Nonetheless, he sent me to [segregation] for 10 days." (R. Doc. 61, Ex.. A-2 at 3.) As to Adams, Dawson stated: "Gary Adams . . . prosecuted the change of bribery against me. I informed him that I was

-6-

exercising a constitutional right to exhaust my prison remedies and petition for grievance to access the courts. He then sent me to [segregation] for 10 days." (*Id.*) And as to Estep: "Al Estep initiated the retaliatory conspiracy against me and gave his written explanation of why in his response to my appeal. Mr. Estep specifically states, 'you were charged with bribery because you attempted to exchange dropping grievance/legal action if given a porters job. [T]he filing of frivolous or too may grievances is dealt with in another manner per D.O.C. policy. The charge and decision [were] appropriate.'" (*Id.*)

Even viewing these allegations in the light most favorable to Dawson, they do not establish that Samu, Adams or Estep had a retaliatory motive or personally participated in the alleged conspiracy. Samu's only involvement was that he presided over the disciplinary hearing at which Dawson was convicted. Adams' only involvement was that he investigated the bribery charge and presented facts in support of the charge at the hearing. Estep's only involvement was that he affirmed Dawson's conviction. Estep's statement regarding the filing of grievances was merely an explanation of prison procedure and is not evidence of retaliation. Dawson claims that, because of his supervisory role, Estep was "responsible for knowing everything that transpires in the prison." (*Id.* at 1.) Our case law instructs that a prison official cannot be held liable for all actions that occur at a prison merely because he has general supervisory responsibility. *Mitchell*, 80 F.3d at 1441 ("supervisor status by itself is insufficient to support

liability").

Because Dawson produced no evidence that Samu, Adams and Estep participated or acquiesced in the alleged deprivation of his constitutional rights or inadequately trained or supervised the officers who allegedly did (Bowker and Johnson), the district court did not err in granting summary judgment to these defendants. *See McKee*, 703 F.2d at 483 ("defendant Heggy is liable to [plaintiff] only if Mr. Heggy participated or acquiesced in [plaintiff]'s deprivation or if he inadequately trained or supervised the officers who did"); *see also Woodword v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992) ("supervisor liability [under § 1983] requires allegations of personal direction or of actual knowledge and acquiescence") (quotations omitted).

B.      Jury Instructions

Dawson argues the district court improperly instructed the jury and failed to give a requested instruction. Normally, we review a refusal to give an instruction for an abuse of discretion. *Wolfgang v. Mid-Am. Motorsports, Inc.*, 111 F.3d 1515, 1525 (10th Cir. 1997). In assessing whether such abuse has occurred, we "examine the instructions as a whole to determine whether they sufficiently cover the issues, facts and evidence in the case." *Id.* at 1526. The ultimate question of whether a jury was properly instructed is a question of law we review de novo. *Id.*

Here, we have no way of reviewing whether the instructions sufficiently

cover the issues, facts and evidence because the record on appeal does not include either the trial transcript or the jury instructions. In *Roberts v. Roadway Express, Inc.*, we held we could not consider the appellant's objections to the jury instructions because the "[a]ppellant has provided neither the instructions given to the jury nor a complete record of the proceedings on which those instructions were based." 149 F.3d 1098, 1109 (10th Cir. 1998). This holding is equally applicable here.

Pursuant to Rule 10(b)(2) of the Federal Rules of Appellate Procedure, "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion." The rules of this Circuit similarly provide that "[t]he appellant must provide all portions of the transcript necessary to give the court a complete and accurate record of the proceedings related to the issues on appeal." 10th Cir. R. 10.1(A)(1). The district court specifically denied Dawson's request for a free trial transcript and instructed him to pay the transcript fee in advance or make other arrangements with the court reporter. He failed to do so.[3]

Dawson did not appeal from the district court's denial of his request for a

---

[3] Dawson also failed to include the proposed and final jury instructions in the record on appeal, in contravention of our rules. *See* 10th Cir. R. 10.3(C)(6) ("Every record on appeal sent to this court must include: . . . all jury instructions when an instruction is an issue on appeal, as well as proposed instructions that were refused").

free transcript; nor did he file a motion for a free transcript with this Court. He made no mention of the missing transcript in his opening brief. In his reply brief, however (and without citation to authority to support his request), Dawson "urges the Court to order a complete transcript of his trial . . . ." (Appellant's Reply Br. at 2.) He claims "[t]he defendants are attempting to decieve [sic] the Court in hope that the Court will not require that the trial record be transcribed for a de novo review." (*Id.*) It is not for the Court to order the transcript of the trial; that is the duty of the appellant. *See* Fed. R. App. P. 10(b)(1). Dawson claims the government has misrepresented facts but has not detailed which portions of the trial record deserve transcription or explained (other than in a most general and somewhat conclusory way) what would be revealed. In short, he has not justified his request for a free transcript even if we were to overlook his procedural missteps. We have held "on a number of occasions and in a variety of settings that the lack of a required transcript leaves us with no alternative but to affirm." *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1238 (10th Cir. 1999) (quotations omitted); *see also United States v. Vasquez*, 985 F.2d 491, 494 (10th Cir. 1993) ("When the record on appeal fails to include copies of the documents necessary to decide an issue on appeal, the Court of Appeals is unable to rule on that issue."). "An appellant's failure to provide a necessary transcript entails more than mere noncompliance with some useful but nonessential procedural admonition; it raises an effective barrier to informed, substantive

appellate review." *Morrison Knudsen Corp.*, 175 F.3d at 1238 (quotations omitted).

C.      Judgment as a Matter of Law

Dawson claims the court erred in denying his post-verdict motion for judgment as a matter of law pursuant to Rule 50(b). Generally, we review a district court's decision on a motion for judgment as a matter of law de novo, applying the same legal standard as the trial court. *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1160 (10th Cir. 2006). Because Dawson failed to include the trial transcript in the record on appeal, we have no means of evaluating the adequacy of the evidence presented. Dawson has thus waived his claim concerning the sufficiency of the evidence. *See Vasquez*, 985 F.2d at 495 ("By failing to file a copy of the trial transcript as part of the record on appeal, the appellant waives any claims concerning the sufficiency of the evidence at trial.").

Even if we were to consider Dawson's Rule 50(b) motion in the absence of an adequate record, the motion was properly denied because it was not preceded by a proper Rule 50(a) motion. A "pre-verdict Rule 50(a) motion" is "a prerequisite to a post-verdict motion under Rule 50(b)." *Marshall*, 474 F.3d at 738. The motion Dawson filed before trial had commenced was not a proper Rule 50(a) motion. *See* Fed. R. Civ. P. 50(a)(2) ("A motion for judgment as a matter of law may be made at any time [during trial] before the case is submitted to the jury.") Thus, regardless of what the trial transcript were to reveal, the denial of

-11-

Dawson's Rule 50(b) motion was not error.

D.    Admission of Prior Convictions

Dawson's final contention of error suffers from the same infirmity. While we generally review a trial court's decision to admit or exclude evidence for an abuse of discretion, *United States v. McConnel*, 464 F.3d 1152, 1162 (10th Cir. 2006), *cert. denied*, 127 S.Ct. 2085 (2007), we will not do so here because Dawson failed to include the transcripts of the trial and the hearing where the court heard argument on the motions in limine and made its ruling. "An appellant who provides an inadequate record does so at his peril." *Dikeman v. Nat'l Educators, Inc.*, 81 F.3d 949, 955 (10th Cir. 1996). "The failure to file a transcript . . . precludes review of the trial court's evidentiary rulings. Challenges to the admission of evidence will not be considered by the Court of Appeals in the absence of a record containing those portions of the transcript on which the appellant relies." *Vasquez*, 985 F.2d at 495.

We **AFFIRM** the grant of summary judgment and **DISMISS** the remainder of Dawson's appeal.

ENTERED FOR THE COURT

Terrence L. O'Brien
Circuit Judge

-12-